**POMERANTZ v. CLARK et al., and eleven other cases.**

Civ. A. Nos. 50–615, 50–624, 50–929, 51–67, 51–74, 51–79, 51–98, 51–132, 51–185, 51–260, 51–261, 51–415.

United States District Court
D. Massachusetts.

Nov. 30, 1951.

Julius Levy, 295 Madison Avenue, New York City, Harold Brown, Boston, Mass., Matthew Cohen, Boston, Mass., Pomerantz, Levy, Schreiber & Haudek, New York City, Leo Sontag, Holtz & Rose, Bernard Kaplan, Max Singer, Paul G. Counihan, Meyer A. Moscow, Jacob Shactman, and Frank A. Silver, all of Boston, Mass., of counsel, for plaintiffs who argued in opposition to motions to dismiss.

Charles B. Rugg, Thomas H. Mahony, Boston, Mass., Rowland Long, Springfield, Mass., Daniel Lyne, Harold Taylor, H. LeBaron Sampson, John M. Hall, and Edward C. Park, all of Boston, Mass., Bingham, Dana & Gould, Choate, Hall & Stewart, Lyne, Woodworth & Evarts, Ropes, Gray, Best, Coolidge & Rugg, and Withington, Cross, Park & McCann, all of Boston, Mass., of counsel, for defendants who argued in favor of motions to dismiss.

WYZANSKI, District Judge.

Motions to dismiss complaints for failure to state a cause of action have been filed by all defendants in twelve companion cases. These cases involve similar charges brought by minority policyholders against directors of two insurance companies and other persons alleged to have participated in corporate loans said to have been improper and unlawful. The reasons why these motions must be granted can be most conveniently stated by selecting for this opinion the typical motion filed by Sidney W. Winslow, Jr., one of the defendants in Civil Action No. 50–625, Pomerantz v. Clark et al.

Pomerantz's complaint alleges that he, being a citizen of New York, is a policyholder of the John Hancock Mutual Life Insurance Company, a mutual life insurance corporation organized under the laws of Massachusetts, of which defendant Winslow, a citizen of Massachusetts, is a director. Pomerantz, suing on behalf of all other policyholders similarly situated, charges Winslow, many of his co-directors and others with liability because of their part in the making of a loan of $3,500,000 to Texmass Petroleum Corporation and a loan of at least $332,938 to Petroleum Reserve Corporation. John Hancock is joined as a defendant.

The principal allegations of the complaint are that Texmass was insolvent at the time of the loan; that John Hancock received inadequate security; that the directors

failed to obtain independent appraisals of the value of the security; that Winslow and his co-directors failed to follow customary and proper investigatory procedures; that the loan was made in violation of the insurance laws of Massachusetts, specifically because it was made to an insolvent company, was largely on unimproved real property and was in excess of two-thirds of the fair market value of the improved real property; that the loan was made at lower than prevailing interest rates; and that the loan was made for the purpose of bailing out and otherwise assisting relatives and business associates of the directors. Similar allegations are made about the loan to Petroleum.

The complaint alleges in Paragraph 28 that demand on the directors to bring this suit would be futile because the defendant-directors constitute an overwhelming majority of the present board of John Hancock. And the complaint in Paragraph 29 avers that "Demand on the members and policyholders of John Hancock to bring this suit would be futile because:

"(a) Under the laws of Massachusetts and the charter and by-laws of John Hancock, the directors and officers and not the policyholders manage the affairs of the Company, including the bringing of actions for it. The policyholders as a body cannot by resolution manage the Company or compel its management to bring suit.

"(b) Compliance by John Hancock's management with a policyholders' resolution to bring this action would leave the conduct of the action in hostile hands and the action could not be properly prosecuted.

"(c) Efforts to secure action by John Hancock's policyholders would require a proxy fight with the management. There are several million policyholders of John Hancock who live in all parts of the world and the expense of communicating with them would be prohibitive."

Pomerantz asks that Winslow and the individual defendants be ordered to pay over to John Hancock $1,500,000 and interest upon condition that John Hancock transfers to them so much of the Texmass loan as remains unpaid. He also seeks other forms of relief.

The only issue which requires consideration is whether on his allegations plaintiff is authorized to prosecute for the benefit of John Hancock a claim upon which the complainant admits he did not give the policyholders acting in a corporate meeting an opportunity to pass before he sued.

Since the jurisdiction of this court is founded upon the diversity of citizenship of the parties, plaintiff's complaint, to be valid, must state a cause of action cognizable in the state courts of Massachusetts. Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Thus, in a policyholder's derivative action brought in this District against the directors of a Massachusetts corporation and those alleged to have confederated with them in wrongdoing, plaintiff's complaint must meet the requirements of the substantive law of this Commonwealth. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. Cf. Cohen v. Beneficial Loan Corp., 337 U.S. 541, 556 lines 8–10, 69 S.Ct. 1221, 93 L.Ed. 1528; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520; Steinberg v. Hardy, D.C.D.Conn., 90 F.Supp. 167. This prerequisite is in addition to, though consistent with, the prerequisite that plaintiff must meet the requirements of an adjectival nature stipulated in Rule 23 of the Federal Rules of Civil Procedure, 28 U.S. C.A. Cohen v. Beneficial Loan Corp., supra.

For many years the substantive law of Massachusetts has been that, except where immediate action is required, Brewer v. Proprietors of Boston Theatre, 104 Mass. 378, 392–394 or there is no impartial internal corporate forum to which he can resort, Von Arnim v. American Tube Works, 188 Mass. 515, 74 N.E. 680, a member of a corporation has no cause of action of a derivative nature unless prior to suit he laid his complaint first before the directors if they were not disqualified and then before the members of the corporation if they were not disqualified to take action against those whom he alleges have wronged the corporation. Dunphy v. Traveller Newspaper Association, 146 Mass. 495, 16 N.E. 426; Bartlett v. New York, New

Haven and Hartford R. R. Co., 221 Mass. 530, 538, 109 N.E. 452; S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 93 N.E.2d 241.

The fundamental basis of the rule is the Massachusetts view that neither an individual member nor a court is usually best fitted to determine whether it is to the interest of a corporation publicly to enforce corporate claims even if those claims are founded on plainly unlawful conduct participated in by corporate officers or directors. Solomont's case supra; Brewer's case supra. A disinterested internal organ of the corporation has the advantage of familiarity with the enterprise, with those who have conducted it and with the record of success or failure. Moreover, it is the internal organs that the member voluntarily chose as his partners in decision when he freely contracted to join their association. Unless it can be shown that each available internal organ is biased, or refused to hear evidence, or acted unreasonably, or in some other manner was disqualified, the courts of Massachusetts will not act at the suit of a minority member. He is remitted to the directors or, if they are disqualified, to the members as a body as the appropriate tribunal to decide not only if a derivative claim has merit but if the corporate welfare is best promoted by suing upon it. Solomont's case.

In the instant case the first question is whether plaintiff was entitled to sue before he made demand upon the directors. Plaintiff asserts that such resort was unnecessary because a majority of them were charged with wrongdoing. To this defendant replies that the accused might withdraw from a directors' meeting leaving a disinterested quorum competent to act for the corporation. Whether such a quorum could be expected to weigh impartially a charge against their accused colleagues is a problem which has not been squarely settled in Brewer's, Von Arnim's or any other Massachusetts case. It seems to be more difficult to determine the Massachusetts state rule on this than on other determinative issues in the instant case. Hence for present purposes I shall assume, without deciding, that plaintiff did not have to resort to the directors before bringing this suit.

The second question is whether plaintiff was entitled to sue before he made demand upon the fellow members. He gives only three reasons, each of which is readily disposed of. The first two points made by plaintiff are that the body of the members cannot compel the directors to sue, and that if the directors chose to sue at the members' request the suit would be in hostile hands and not properly prosecuted. Both these points erroneously assume that because a minority member is not allowed to bring a derivative suit a majority of the members at a meeting are also not allowed to bring against a majority of the directors a derivative suit without the assent of the board of directors or a quorum thereof. This is not the law. If the body of the members brings a derivative suit against the majority of the directors, their complaint is not open to those objections to a minority holder's derivative suit which furnished the basis of the Dunphy, Bartlett, Solomont and other cases. It is the type of derivative suit permitted under Massachusetts law. Bartlett's and Solomont's cases. The third point made by plaintiff in Paragraph 29 of his complaint is, at least as stated, without merit. The mere fact that a corporation is a large one with scattered members to whom it would be expensive to send proxies and whose support it would be difficult to command even in a just cause has not been recognized in Massachusetts as a ground for not resorting to the body of the members. This is plain from Bartlett's case which involved the New York, New Haven and Hartford Railroad.

However, it would be unfair to dispose of this motion without taking into account other aspects of the problem which, though they have not been artistically pleaded, do lurk in the case, were adverted to by the Court and counsel during the argument, and (if they had merit) could be presented by amendment even at this late date.

This is, of course, not a suit by a stockholder, and it is not a suit against a busi-

ness corporation. It is an action by a policyholder against a mutual life insurance company, different in legal structure, in size and in practical internal corporate functioning from the relatively small company involved in Solomont's case and even from the large railroad involved in Bartlett's case. Nothing of legal significance in this case is to be attributed to the mere fact that plaintiff is a policyholder rather than a shareholder. He has voting rights of the character set forth in Mass.G.L.(Ter. Ed.) c. 175, § 94. And his rights to bring a derivative action on behalf of his corporation are parallel to a shareholder's rights to bring a like action. Cf. Koster v. Lumbermen's Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067. Nor is anything of legal significance to be attributed to statutory or other formal legal differences between a business corporation and a mutual life insurance company with respect to types of business, corporate powers, directors' duties or members' rights. Conceivably the laws, especially Mass.G.L.(Ter. Ed.) c. 175, §§ 3A, 68 and 193A, that subject mutual insurance companies to supervision and correction by the insurance commissioner reduce, but certainly do not expand, the right of a minority member to bring suit on account of a loan wrongfully made by directors of the corporation. But this point need not be decided for, if it has merit, it weakens rather than strengthens plaintiff's complaint.

What distinguishes the case at bar from any reported Massachusetts case is that the attendance in person and by proxy at members' meetings of mutual insurance companies has differed and for legal, financial and other practical reasons will probably always differ from attendance at stockholders' meetings of even the largest business corporations. From the arguments at bar it appears that if allowed to amend plaintiff could make averments of this tenor.

Although every policyholder (except a pensioned employee) is a voting member of a mutual life insurance corporation and is told of his rights in his contract, in periodic policy notices and often in public and other notices, few policyholders know their voting rights or attend meetings or sign proxies. In John Hancock with millions of policyholders, in the last half century there never has been a meeting at which even close to one per cent of the eligible voters have participated in person or by proxy. A substantial part of those who attend members' meetings are company employees or insurance agents or their friends who have come more as a favor to management than in their own interest. For a policyholder to reach all his fellows and ask them to come in person or send proxies would involve expenses far beyond the means of any but a few multimillionaires. If a policyholder, aware that meetings usually attracted a limited attendance and therefore hopeful of making a limited appeal for proxies, proceeded to secure such limited proxies, he would have to file them seven days in advance of a meeting and this would expose his hand so that the management might get a larger, but not necessarily more disinterested, personal attendance than he could have anticipated. For these and other reasons a meeting of members of a large insurance company is not analogous in independence, impartiality, information, or width or fairness of representation to a meeting of shareholders of either the small business corporation involved in Solomont or the large railroad involved in Bartlett.

In considering whether these distinctions are so vital as to warrant creating an exception to the Massachusetts rule that before bringing a derivative suit a member must first lay his case before the body of members, the never-to-be-forgotten caution is that this Court is not free to render such decision as seems to it equitable, just and in accordance with public policy and responsive to all those jurisprudential criteria which so often enter into what Justice Cardozo called "The Nature of the Judicial Process". A federal judge sitting in a diversity jurisdiction case has not a roving commission to do justice or to develop the law according to his, or what he believes to be the sounder, views. His problem is less philosophical and more psychological. His task is to divine the views of the state

court judges. Here the question is whether the Massachusetts Supreme Judicial Court, on the ground that as a matter of fact no members' meeting of a mutual life insurance company could be an appropriate, fair, reasonable, representative tribunal, would allow a policyholder, without laying his claim before the body of the members or a quorum of them, to maintain a derivative suit on behalf of a Massachusetts mutual life insurance company.

The Solomont case decided only last year, the earlier cases in this field, the general jurisprudence applied by the Massachusetts courts and the express and implied views of its judges on public policy show that Massachusetts would not create an exception for an insurance company policyholder who complained of the sort of wrongs here alleged and who had never presented his claims to any sort of meeting of policyholders or alternatively sought other ways of discovering whether his claim had the support of a representative group of policyholders.

The eminence of the Massachusetts Supreme Judicial Court, an eminence not surpassed by any American tribunal, is in large measure due to its steadiness, learning and understanding of the durable values long prized in this community. Subtle variations and blurred lines are not characteristic of that court. Principles are announced and adhered to in broad magisterial terms. The emphasis is on precedent and adherence to the older ways, not on creating new causes of action or encouraging the use of novel judicial remedies that have sprung up in less conservative communities. Here abides the ancient faith in the right of men to choose their own associates, make their own arrangements, govern themselves and thus grow in responsibility without much in the way of either hindrance or help from the state. This basic philosophy permeates the Massachusetts rules governing derivative suits and makes the state court reluctant to intervene in internal controversies unless parties are obviously prevented from getting fair treatment at the hands of those with whom they chose to be associated and by whose judgment they once desired to be bound.

In the state court there is also an evident if not declared skepticism about the effectiveness of minority stockholders' suits in promoting the welfare, enhancing the reputation or enriching the coffers of those corporations which are supposed to have been wronged. Where there have been abuses, the cooperative action of the majority of the corporate members, the criminal law, and the administrative and judicial remedies available to executive officers of the state have evidently been regarded as adequate. Unsupported minority stockholder suits have been considered appropriate only where no fair forum except the court was available.

Another philosophy prevails in many places. There it is recognized that while minority corporate members are often actuated by selfish interests, they are sometimes useful gadflies which become the most effective instruments for ferreting out wrongdoing, for pursuing it publicly and for giving point to the only sanctions actual and potential wrongdoers fear. To prevent these minority members from suing until they have acquired the support of a majority of their fellows is in most cases to throttle them. They must move against inevitable inertia which always favors the *status quo,* the respectable and the powerful, particularly if, regardless of wrongdoing, a particular company has prospered. They rarely have large funds at their command to circularize and arouse their fellows. And, above all, they are not in a position to state the details of wrongdoing which would persuade unprejudiced men until after they have brought suit and had the advantage of testimonial compulsion. Moreover, courts in some states have been affected in their equity and common law rules by the noticeable shift in statutory rules in the direction of a larger role in corporate affairs for the minority stockholder and in the direction of greater legal protection of his interests from the overreaching, collusion or indifference of his fellows.

But this other philosophy—this reliance on the minority member as the instrument for maintaining corporate order and this use of judicial power to investi-

gate and decide upon his claims—is not the usual Massachusetts view. And I am confident that the state court would not allow a minority policyholder to act as the self-appointed champion of his fellows in a case like the present where it is not suggested (1) that any director, officer or member made a personal profit, or (2) that at meetings of members the attendants have been corrupted, or moved by patently irrational or prejudiced considerations, or (3) that the plaintiff has tried to secure the support of either a meeting of the members or some equally or more representative group of the members but that such members have unreasonably withheld their assent. If the Massachusetts court were to adopt a novel exception permitting a minority member of a large insurance company to bring a derivative suit, before he had the agreement of a majority of his fellows assembled at a properly qualified meeting, it would have to be on much stronger allegations of egregiously wrongful conduct by the defendants, of vain efforts by plaintiff to secure support of the members and of unreasonable refusals of cooperation than have been set forth in this complaint or in any amendment which was discussed at bar.

Complaint dismissed on the merits without leave to amend.