Tressie R. CARROLL

v.

NEW YORK, NEW HAVEN & HARTFORD RAILROAD et al.

Helene GLENMORE

v.

George ALPERT et al.

Civ. A. Nos. 56–243, 56–279.

United States District Court
D. Massachusetts.

May 23, 1956.

Donald T. Field, Boston, Mass., for Tressie R. Carroll and for security holders of New York, New Haven & Hartford Railroad Co. except Helene Glenmore.

Julius Levy, Pomerantz, Levy & Haudek, New York City, and J. Joseph Maloney, Jr., Maguire & Roche, Boston, Mass., for Helene Glenmore.

John L. Hall and Richard Wait, Choate, Hall & Stewart, Boston, Mass., for New York, New Haven & Hartford Railroad Co. and George Alpert.

Edward B. Hanify (of Ropes, Gray, Best, Coolidge & Rugg), Boston, Mass., and Charles W. Bartlett (of Ely, Bartlett, Thompson & Brown), Boston, Mass., for F. C. Dumaine, Jr., W. B. Snow, Joseph B. Ely, Russell Makepeace and Amoskeag Co.

Charles C. Cabot and Henry V. Atherton (of Herrick, Smith, Donald, Farley & Ketchum), Boston, Mass., for Union Securities Corp.

Arthur L. Brown, Boston, Mass., for Patrick B. McGinnis.

Edmund M. Sweeney and William T. Griffin, New York City, for New York, New Haven & Hartford Railroad Co., George Alpert, Patrick F. McDonald, Homer O. Whitman and Edward F. Williams.

Herbert Burstein, New York City, for William M. Goss, George T. Carmichael, Bernard B. Badgley and Homer O. Whitman.

Frederic J. Muldoon and James B. Muldoon, Boston, Mass., for Patrick F. McDonald.

Calvin P. Bartlett (of Hill, Barlow, Goodale & Wiswall), Boston, Mass., for Richard E. Pritchard.

Thomas M. Joyce, Boston, Mass., for John I. Ahern.

WYZANSKI, District Judge.

These are two related cases. Motions to dismiss and for summary judgment have been filed by defendants. In each case a holder of common stock of the New York, New Haven & Hartford Railroad brings a typical stockholder's class suit against the directors of his company complaining that they by illegal acts have deprived the corporation of assets. In each suit there is joined as a defendant the corporation. In each suit the claim of federal jurisdiction is based on the diversity between citizenship of the complaining stockholder on the one hand, and, on the other hand, the corporation and the defendant directors.

In neither suit is it alleged that the stockholder has presented his claim to the body of the shareholders in a stockholders' meeting. And defendants' motions assert that (there being no proof that the majority of the shareholders' votes are under the control of the directors) the absence of this allegation is fatal to the suits.

For reasons which I have heretofore made clear in Pomerantz v. Clark, D.C. D.Mass.1951, 101 F.Supp. 341, I regard myself as governed in this type of case by the explicit decisions of the Supreme Judicial Court, and by the implications which seem to me clear from the course of decisions in that Court.

Here the first point raised is whether under its rules of conflict of laws the Massachusetts Supreme Judicial Court would apply the corporate law of Massachusetts or the corporate law of some other state. It is suggested that because the New York, New Haven & Hartford Railroad Co. is incorporated in several different states, including Massachusetts, it would be possible for the Massachusetts court to apply the corporate law of that one of the states of incorporation in which the railroad carried on its principal activities. See Henry E. Foley, Incorporation, Multiple Incorporation, and the Conflict of Laws, 42 Harvard Law Review 516 (1929). The theoretical ingenuity displayed in Mr. Foley's analysis has not won approval as yet from the Massachusetts Supreme Judicial Court. Earlier cases in that court involving stockholders' suits against the predecessor of this very railroad have been adjudicated on the basis of Massachusetts corporate law, though admittedly Mr. Foley's suggestion was not explicitly considered. Bartlett v. New York, New Haven, & Hartford R. Co., 221 Mass. 530, 109 N.E. 452. I conclude that to-

day as previously the Massachusetts state court would apply to this dispute its own doctrines of corporate law.

■ Under that corporate law the conditions precedent which must be met before a stockholder will be heard to complain, even of illegal conduct by the directors of his enterprise, take the stringent form described by and analyzed in Pomerantz v. Clark, 1951, and S. Solomont & Sons Trust, Inc., v. New England Theaters Operating Co., 1950, 326 Mass. 99, 93 N.E.2d 241. It makes no difference whether some other court or some academic authorities or some persons with different views of jurisprudence and social policy would be more latitudinarian. For this Court in this case the rule is to be taken from the express and implied rules of the Supreme Judicial Court of Massachusetts, especially since the Massachusetts rule was so recently reaffirmed in the face of extremely grievous charges, made in the two cases just cited.

One of the indispensable prerequisites in Massachusetts is that the stockholder before bringing his suit show that he has resorted to the body of shareholders, except in the one instance where he shows that the majority of the voting stock is under the control of the alleged wrongdoers. It is not enough for him to show that at a particular meeting less than all the stockholders are likely to show up, and that of those who do attend a majority will be corruptly allied with the alleged nefarious directors. Perhaps the reason for the refusal of the Massachusetts court to permit allegations of this type to be treated as sufficient is that they would lead to speculative testimony. Only when a shareholder has actually raised his point at a meeting can one know who will be present, who will vote, and whether those present and voting will be a quorum and will vote independently or under corrupt inducement, favorably or unfavorably. Finally, it *may* be that under Massachusetts law the absentees are counted as if their silence reflects acquiescence and half-hearted approval of whatever is done by a majority of those voting at a meeting attended by a quorum.

■ Stiff as is this orthodox Massachusetts doctrine, it is up to the Massachusetts Legislature or the Massachusetts court, not up to a Federal judge in a diversity suit, to alter its impact. Here the orthodox doctrine is fatal to plaintiffs, for on their own allegations and supporting affidavits they indicate that although the combined interests of the individual defendants and those who are their agents under their unequivocal control do not exceed 50 per cent of the voting stock of the corporation, plaintiffs have not resorted to the body of the shareholders.

It is true that plaintiff in each case tries to reach the 50 per cent mark by adding to the total of shares said to be owned by defendants other shares owned by myriad interests more or less remote from defendants. Some of these other owners are distant relatives, corporations in which the defendants have little, if any, influence, employees and employee groups of uncertain independence, brokers, and friends. How far these interests would be under control of defendants in a showdown vote no one can know. The Court will not receive a Gallup-poll type of evidence and issue a prophecy based thereon. Men's votes on such matters as those here in issue cannot be predicted with any accuracy. Only when faced with the responsible task of casting a vote that counts does a shareholder show if he is independent. Plaintiffs, if they wish to succeed, must put the matter to the test of a shareholders' meeting. Then if it appears that the voters were corrupted, coerced, or had conspired with defendants, a court can act in accord with Massachusetts law.

Defendants' motions granted.

Judgment for the defendants with costs in each case.