### In re KAUFFMAN MUTUAL FUND ACTIONS.

**Joseph B. Kauffman, Plaintiff-Appellant.**

**No. 72–1288.**

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1973.

Decided May 14, 1973.

Coffin, Chief Judge, concurred and filed opinion.

William T. Coleman, Jr., Philadelphia, Pa., with whom Bruce W. Kauffman, David H. Pittinsky, Lawrence Berger, Aaron M. Fine, Philadelphia, Pa., Joseph B. Kauffman, Atlantic City, N. J., Dilworth, Paxon, Kalish, Levy & Coleman, Harold E. Kohn, Philadelphia, Pa., were on brief, for appellant.

Lawrence T. Perera, and Sumner H. Babcock, Boston, Mass., with whom the following attorneys were on briefs, for appellees: Boston Fund, Inc., William J. Speers, Jr., Samuel Adams, Warner & Stackpole, Boston, Mass.; Boston Management & Research Co., Inc., Vance, Sanders & Co., Inc., Gael Mahony, Reginald C. Lindsay, Hill & Barlow, Boston, Mass.; The Colonial Fund, Inc., Lewis H. Weinstein, John Paul Sullivan, Christian M. Hoffman, Foley, Hoag & Eliot, Boston, Mass.; Colonial Management Associates, Inc., James H. Orr, John R. Hally, Nutter, McClennen & Fish, Boston, Mass.; Eaton & Howard Stock Fund, Eaton & Howard Balanced Fund, Thomas D. Burns, Erik Lund, Burns & Levinson, Boston, Mass.; Eaton & Howard, Inc., Charles F. Eaton, Jr., John F. Groden, John M. Reed, Withington, Cross, Park & Groden, Boston, Mass.; Fidelity Fund, Inc., Fidelity Capital Fund, Inc., Puritan Fund, Inc., Salem Fund, Inc. (formerly Dow Theory Investment Fund, Inc.), John J. Curtin, Jr., Richard F. McCarthy, Bingham, Dana & Gould, Boston, Mass.; Fidelity Management & Research Co., Edward C. Johnson 2d, Edward B. Hanify, George T. Finnegan, Ropes & Gray, Joseph P. Rooney, Ansel B. Chaplin, Roreg M. Barzun, Gaston, Snow, Motley & Holt, Boston, Mass.; Fidelity Trend Fund, Inc., Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa.; Keystone Custodian Funds, Inc., Wilfred Godfrey, Franklin R. Johnson, Boston, Mass.; Marvin Schwartz, Richard E. Carlton, Sullivan & Cromwell, New York City; Loomis-Sayles Mutual Fund, Inc., Daniel B. Bickford, Ely, Bartlett, Brown & Proctor, Boston, Mass.; Loomis-Sayles & Co., Inc., Maurice T. Freeman, Samuel Hoar, Goodwin, Procter & Hoar, Boston, Mass.; Massachusetts Fund, Daniel F. Featherston, Jr., Featherston, Homans & Klubock, Boston, Mass.; The Massachusetts Co., Inc., Henry R. Guild, Richard F. Barrett, Douglas Danner, Powers & Hall, Boston, Mass.; Pioneer Fund, Inc., C. Thomas Swaim, Sherburne, Powers & Needham, Boston, Mass.; Pioneer Management Corp., Philip L. Carret, Jerome P. Facher, Hale & Dorr, Boston, Mass.; The Putnam Growth Fund, The George Putnam Fund of Boston, Putnam Investors Fund, Inc., Jeffrey Swope, Palmer & Dodge, Boston, Mass.; Putnam Management Co., Inc., Charles M. Werly, Samuel E. Gates, Steven A. Schatten, Debevoise, Plimpton, Lyons & Gates, New York City; Van Strum & Towne, Inc., Isaac Shapiro, Milbank, Tweed, Hadley & McCloy, New York City; Bullock Fund, Ltd., Dividend Shares, Inc., Stephen R. Steinberg, Reavis & McGrath, New York City; Chemical Fund, Inc., E. Roger Frisch, Walsh & Frisch, New York City; Calvin Bullock, Ltd., Hugh Bullock, F. Eberstadt & Co., Francis S. Williams, Distributors Group, Inc., Herbert R. Anderson, Marvin Schwartz, Richard E. Carlton, Sullivan & Cromwell, New York City; Energy Fund, Inc., Ralph E. Samuel & Co., Donald C. Samuel, Larry M. Lavinsky, Proskauer, Rose, Goetz & Mendelsohn, New York City; Investment Co. Inst., Edgar H. Brenner, Jeffrey A. Burt, Arnold & Porter, Washington, D. C.; Manhattan Fund, Inc., Paul M. O'Connor, Jr., Whitman & Ransom, New York City; Tsai Management & Research Corp., W. Foster Wollen, Shearman & Sterling, New York City; State Street Investment Corp., Federal Street Fund, Inc., Haskell Cohn, Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass.; State Street Research & Management Company, Paul C. Cabot, Harold M. Willcox, Norman A. Hubley, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass.; Wellington Fund, Inc.,

Windsor Fund, Inc., Wellington Management Co., Walter L. Morgan, Robert M. Buchanan, Charles C. Cabot, Jr., Sullivan & Worcester, Boston, Mass.; Affiliated Fund, Inc., Edward J. Ross, Breed, Abbott & Morgan, New York City; Lord, Abbett & Co., Robert S. Driscoll, Judson A. Parsons, Jr., Dewey, Ballantine, Bushby, Palmer & Wood, New York City; Axe-Houghton Fund B, Inc., Scudder, Stevens & Clark Common Stock Fund, Inc., Scudder, Stevens & Clark Balanced Fund, Inc., Channing Shares, Inc., Channing Growth Fund, Channing Balanced Fund, Michael O. Finkelstein, Barrett, Smith, Schapiro & Simon, New York City; E. W. Axe & Co., Inc., Louis K. Hyde, Jr., Scudder, Stevens & Clark, Ronald T. Lyman, Jr., Samuel E. Gates, Steven A. Schatten, Debevoise, Plimpton, Lyons & Gates, New York City; Gerald Tsai, Jr., David Hartfield, Jr., White & Case, New York City; National Securities Series, National Securities Stock Series, National Securities Growth Series, Thomas B. Fenlon, Emmett, Marvin & Martin, New York City; National Securities & Research Corp., Philip C. Smith, Robert J. Sisk, Hughes, Hubbard & Reed, New York City; The Dreyfus Fund, Inc., The Dreyfus Corp., Howard M. Stein, Stuart A. Jackson, Royall, Koegel & Wells, New York City; The One William Street Fund, Inc., Robert S. Carlson, Roth, Carlson, Kwit, Spengler & Goodell, New York City; Lehman Brothers, Allan B. Hunter, James J. Hagan, Simpson, Thacher & Bartlett, New York City; The Value Line Special Situations Fund, Inc., Arnold Bernhard & Co., Inc., Arnold Bernhard, United Funds, Inc., United Accumulative Fund, United Income Fund, United Science Fund, Waddell & Reed, Inc., Joe Jack Merriman, Albert D. Jordan, Valicenti, Leighton, Reid & Pine, Boston, Mass.; Selected American Shares, Inc., Security Supervisors, Edward P. Rubin, Edward H. Hatton, Lynne E. McNown, Jenner & Block, Chicago, Ill.; Stein, Roe & Farnham Balanced Fund, Inc., Stein, Roe & Farnham, Harry H. Hagey, Jr., Otis H. Halleen, Sonnenschein, Levinson, Carlin,

Nath & Rosenthal, Chicago, Ill.; Technology Fund, Inc., Supervised Investors Services, Inc., John Hawkinson, Francis E. Schlax, Meyers & Matthias, Chicago, Ill.; Financial Industrial Fund, Inc., Financial Programs, Inc., Thomas J. Herbert, Leland E. Modesitt, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo.; Hamilton Funds, Inc., James A. Clark, Berge, Martin & Clark, Denver, Colo.; Hamilton Management Corp., Roberts B. Owen, Covington & Burling, Washington, D. C.; Washington Mutual Investors Fund, Inc., Johnston, Lemon & Co., James H. Lemon, John A. Beck, Frost, Towers, Hayes & Beck, Washington, D. C.; T. Rowe Price Growth Stock Fund, Inc., Rowe Price New Horizons Fund, Inc., Stanley J. Friedman, Shereff, Friedman, Hoffman & Goodman, New York City; T. Rowe Price & Associates, Inc., Charles W. Schaeffer, Rowe Price Management Company, Inc., T. Rowe Price, Daniel A. Pollack, Pollack & Singer, New York City; Investors Diversified Services, Inc., Stuart F. Silloway, A. Vernon Carnahan, Donovan, Leisure, Newton & Irvine, New York City; American Mutual Fund, Inc., William W. Vaughn, O'Melveny & Myers, Los Angeles, Cal.; The Investment Co. of America, Carl J. Schuck, Overton, Lyman & Prince, Los Angeles, Cal.; Capital Research and Management Co., Jonathan B. Lovelace, Philip F. Belleville, Latham & Watkins, Los Angeles, Cal.; American Express Investment Fund, Inc., Robert D. Raven, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal.; American Express Investment Management Co., Fred H. Merrill, Richard Murray, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal.; Anchor Growth Fund, Inc. (formerly Diversified Growth Stock Fund, Inc.), Anchor Income Fund, Inc. (formerly Diversified Investment Fund), Fundamental Investors, Inc., Cornelius J. Moynihan, Jr., Peabody, Brown, Rowley & Storey, Boston, Mass.; Anchor Corp., John R. Haire, Daniel A. Pollack, Pollack & Singer, New York City; Group Securities, Inc., Howard F. Ordman, Putney,

Twombly, Hall & Hirson, New York City; Investors Mutual, Inc., Investors Stock Fund, Inc., Investors Variable Payment Fund, Inc., Ralph M. Carson, Richard E. Nolan, Frank S. Moseley, Davis, Polk & Wardell, New York City.

Before COFFIN, Chief Judge, ALD-RICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This appeal challenges two rulings of the district court that plaintiff's derivative suit on behalf of certain mutual funds of which he is a shareholder is not maintainable because of failure to allege sufficient reason to excuse a prior demand on the directors, and, as to two funds, on the shareholder. F.R.Civ.P. Rule 23.1, post.[1] We reach only the first issue.

Plaintiff is a shareholder in four mutual funds, the Dreyfus Fund, Inc., Manhattan Fund, Inc., Fidelity Trend Fund, Inc., and the Putnam Growth Fund, the latter two being, respectively, a Massachusetts corporation and a Massachusetts business trust. In December, 1968 he filed this suit in the District of New Jersey in several capacities—not only as a shareholder of the above funds, but also, *inter alia*, as a representative of shareholders of other funds—alleging antitrust and Investment Company Act causes of action against many large mutual funds, their external investment advisers, directors affiliated with both funds and advisers, and the Investment Company Institute, the trade association for the mutual fund industry. The thrust of the antitrust claim, the only one relevant to this proceeding, is that defendant fund directors, who were also affiliated with investment advisers, conspired with funds, advisers, and others to set excessive noncompetitive management fee schedules based solely on the average net assets of the funds. In April, 1969 defense counsel submitted a

list of fifteen preliminary motions, divided into three groups, the second group including a Rule 23.1 attack on plaintiff's failure to make a demand on directors and shareholders. The district court dealt with the first group, challenging plaintiff's capacity to sue, denied the motions, Kauffman v. Dreyfus Fund, Inc., D.N.J., 1969, 51 F.R.D. 18, but certified an interlocutory appeal. The Third Circuit held that plaintiff could only sue derivatively on behalf of the four funds in which he owned shares, [the "Kauffman funds"]. 434 F.2d 727, cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323.

Thereafter, when a second group of motions attacking jurisdiction, venue, and process, but not then including the Rule 23.1 motion, was pressed, the district court severed the antitrust claim (Count I) from the others, and divided it into ten separate actions to be tried in ten separate districts. In July, 1971 plaintiff applied for consolidation under 28 U.S.C. § 1407(a) and in January, 1972 the Judicial Panel on Multidistrict Litigation transferred some of the actions for consolidated pretrial proceedings to the District of Massachusetts. In re Kauffman Mutual Fund Actions, Jud.Pan.Mult.Lit.1972, 337 F.Supp. 1337. After an informal pretrial conference the district court issued a pretrial order to govern future proceedings, setting a time schedule for disposing of motions and looking toward the establishment of a timetable for completing "first-wave" and "second-wave" discovery. Defendants then brought forward, (1) a Rule 23.1 motion to dismiss for failure of plaintiff to make a demand on directors of the Kauffman funds, (2) a Rule 23.1 motion to dismiss, on behalf of the two Massachusetts Kauffman funds, for failure of plaintiff to make a demand on stockholders; (3) a Rule 23.1 motion to dismiss because of plaintiff's

---

1. While we decided the merits in Moses v. Burgin, 1 Cir., 1971, 445 F.2d 369, cert. denied sub nom., Johnson v. Moses, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547, a suit involving a mutual fund, where no

demand had been made, this issue was not there raised and we do not agree with plaintiff that our action was a sub silentio ruling on that issue.

inability to give fair representation, and (4) a motion by non-Kauffman funds to dismiss for failure to state or waiver of any claim upon which relief could be granted. The court, 56 F.R.D. 128, though denying the latter two motions, granted the first two and dismissed the complaint on July 7, 1972. This appeal followed; there being no cross-appeal.

■ Relative to the reasons for not making demand upon the directors, the complaint, the pertinent parts of which are summarized in the margin,[2] alleges the following: (1) a demand would have been futile; (2) the unlawful combination and conspiracy began at least as early as January 1, 1965; (3) the fund directors who were affiliated with the external advisers dominated and controlled the personnel, policies, and boards of directors of the funds; (4) the contracts between the advisers and the funds "have not been either the subject or the result of arm's length bargaining"; (5) the fee for investment advisory and management services, being based solely on the average net assets of a fund, bore no relation to services performed or results and were grossly excessive; (6) the conspiracy involved the funds, their advisers, the "self-dealing" directors, the Investment Company Institute and others unknown, and was aimed at fixing and maintaining the grossly excessive management fees and refraining from competition; and (7) all of the defendants "acquiesced, encouraged, cooperated and assisted in the effectuation and maintenance" of the conspiracy. By uncontradicted affidavits submitted in the spring of 1972, it was established that a majority of the directors of each of the Kauffman funds were not "affiliated" directors within the meaning of section 2(a)(3) of the Investment Company Act of 1940, 15 U.S.C. § 80a–2(a)(3).[3] On

2. 10. [Demand would have been futile.]
22. [At all times directors of each fund have been affiliated with their investment advisers.]
23. [At all times (a) the affiliated directors and their investment advisers] "have dominated and controlled their respective . . . funds and their personnel, policies and boards of directors."
(b) [the affiliated directors] "have dominated and controlled their respective investment advisers and their personnel, policies and boards of directors."
24. [At all times the contracts and fee agreements between the investment advisers and the funds] "have not been either the subject or the result of arm's-length bargaining between them."
25. [The management fees are] "calculated solely on the basis of . . . average net assets."
27. [. . . and are improperly measured and grossly excessive.]
28. "The combination and conspiracy involved in this action consisted and consist of a continuing agreement, understanding and concert of action, *inter alia*, between and among:
(a) each externally managed mutual fund and its respective investment adviser;
(b) each externally managed mutual fund and its self-dealing directors;
(c) each self-dealing director and his respective investment adviser;

(k) the members of the externally managed mutual funds, investment advisers, and self-dealing directors classes and Institute.
29. "The substantial terms of the aforesaid combination and conspiracy were and are to:
(a) fix and adopt similar schedules of grossly excessive management fees unrelated to the services performed by investment advisers and the performance of the externally managed mutual funds;
(b) maintain and stabilize prices for the services performed by investment advisers by adherence to said similar schedules of management fees;
(c) refrain from competing for the business of externally managed mutual funds or the business of investment advisers.
30. "All of the defendants . . . have acquiesced, encouraged co-operated and assisted in the effectuation and maintenance of the aforesaid combination and conspiracy."

3. The affidavits spoke in terms of "affiliated" persons, since the Act at the time of suit required that at least 40% of a fund's directors not be "affiliated" with the fund's adviser. In 1970 the Act was amended to require that at least 40% of the directors not be "interested" persons,

the basis of these allegations and affidavits, the district court held that plaintiff had "not sufficiently shown the merits of his allegations of futility," noting the presumption in 15 U.S.C. § 80a–2(a)(9) that a natural person shall be presumed not to be controlled, and that it could not assume that the non-affiliated (majority) directors had been lax in their duties or that appeal to them would be futile. While the court's reference at this stage to a presumption may have been erroneous,[4] we agree with the court's result.

 For lawyers and judges accustomed to the liberalized "notice" pleading of the Federal Rules, F.R.Civ.P. 8, a brief review of the background of Rule 23.1 is in order. Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach. Socially desirable as minority stockholders' actions may be thought to be, *see* Emerson and Latchman, Shareholder Democracy ch. VIII (1954); Pomerantz v. Clark, D.Mass., 1951, 101 F.Supp. 341, 346, it is normally the directors, not the stockholders, who conduct the affairs of the company. Hence, to be allowed, sua sponte, to place himself in charge without first affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional. His initial burden is to demonstrate why the directors are incapable of doing their duty, or as the Court has put it, to show that "the antagonism between the directory and the corporate interest . . . be unmistakable." Delaware & Hudson Co. v. Albany & Susquehanna R. R., 1909, 213 U.S. 435, 447, 29 S.Ct. 540, 543, 53 L.Ed.

862. This has long meant, as the Court stated in Hawes v. Oakland, 1881, 104 U.S. 450, 26 L.Ed. 827, cited in *Delaware*, that the "cause of failure [to induce corporate action] . . . should be stated with particularity." 104 U.S. at 461, 26 L.Ed. 827. *See also* Wathen v. Jackson Oil & Refining Co., 1915, 235 U.S. 635, 639–640, 35 S.Ct. 225, 59 L.Ed. 395.

 Rule 23.1—"The complaint shall also allege with particularity . . . the reasons for . . . not making the [demand]"—is thus the embodiment of a long-standing principle, or, as the Massachusetts court said in a parallel case, Bartlett v. New York, N.H. & H. R.R., 1915, 221 Mass. 530, at 538, 109 N.E. 452 at 456, "It is not a technical rule of pleading, but one of substantive right." Whether the word "substantive" is exact, it is clear that the "particularity" must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case. Indeed, if the requirement could be met otherwise, it would be meaningless.

Returning to our listing of plaintiff's allegations, ante, we find that, (1) (demand would be futile) is merely a conclusion, not a reason; (2) (dates) does not purport to state a reason; (3) (domination and control) is, again, a statement of ultimate fact, not meeting the test of "particularity"; (4) and (5) are why, allegedly, the acts are wrongful; (6) advances nothing over (3), (4) and (5); (7) (all the named defendants conspired) insofar as it names individual director-defendants who are financially interested in the attacked transaction,

as defined in 15 U.S.C. § 80a–2(a)(19), a somewhat broader category.

The affidavits showed that five of nine trustees of the Putnam Growth Fund, five of the seven directors of Dreyfus, five of the eight directors of Fidelity, and three of the five directors of Manhattan were unaffiliated within the meaning of the Act. They reveal nothing more, except brief vocational information.

4. Although certain facts were presented by affidavit, n. 3, ante, basically the motion to dismiss tested the sufficiency, *vel non*, of the complaint. The presumption supplied by 15 U.S.C. § 80a–2(a)(9) that "[a] natural person shall be presumed not to be a controlled person," whatever may be its effect at a trial, could not be used to contradict the complaint, if plaintiff is correct that the court so employed it.

fails to go far enough. We will group and discuss these allegations, to the extent that they purport to be reasons for not making a demand, somewhat differently.

■ 1. *An allegation of domination and control, unsupported by underlying facts, does not satisfy the requirement of particularity.*

■ The complaint asserts that the directors affiliated with the management advisers "dominate and control" the directorates of the funds. It is conceded, however, that in each instance the self-interested, affiliated director-defendants constitute less than a majority of the membership of the board. Were there a majority, this is a particularity from which a conclusion of control might follow. *Delaware,* 213 U.S. at 443, 29 S.Ct. 540; Rogers v. American Can Co., 3 Cir., 1962, 305 F.2d 297, 299. Without it, or some other factual support, *see, e. g.,* Cathedral Estates v. Taft Realty Corp., 2 Cir., 1955, 228 F.2d 85 (stock control of plaintiff's corporation by interested defendants), conclusory pleading is not enough. *See* Lucking v. Delano, 6 Cir., 1941, 117 F.2d 159, 160; Robison v. Caster, 7 Cir., 1966, 356 F.2d 924, 926–927; Dunphy v. Traveller Newspaper Assoc., 1888, 146 Mass. 495, 498, 16 N.E. 426; Bartlett v. New York, N.H. & H. R.R., 221 Mass. at 534–535, 109 N.E. 452. Plaintiff must allege specific facts demonstrating the unmistakable link between the unaffiliated majority and the affiliated and allegedly wrongdoing minority. *Cf.* Baffino v. Bradford, 1972, D.Minn., 57 F.R.D. 79.

■ In this circumstance plaintiff's brief seeks to infer collective hostility to his claims by dwelling on the fact that his suit has met extended resistance. Whatever might be the effect if the resistance were on substantive grounds, *cf.* DePinto v. Provident Security Life Ins. Co., 9 Cir., 1963, 323 F.2d 826, cert. denied 376 U.S. 950, 84 S.Ct. 969, 11 L. Ed.2d 970, to attempt to capitalize on the circumstance that the corporations are seeking to dismiss because of plain-

tiff's failure to make demand is classic bootstrap. Domination is not established by insistence on the right to have plaintiff plead a valid basis for suit.

■ 2. *The fact that the named defendants participated is not enough to excuse demand upon the directorate.*

Apart from "control," only the affiliated directors—a minority of each board —are alleged to have "acquiesced, encouraged, cooperated and assisted in the effectuation and maintenance" of the conspiracy. The unaffiliated directors are not named as defendants, or even as the ones who approved the acts complained of. Bartlett v. New York, N.H. & H. R.R., 221 Mass., at 536–537, 109 N.E. 452. If we were to rely on plaintiff's citation of Moses v. Burgin, n.1, for anything, it would be for the fact that unaffiliated directors do not necessarily know all that is going on, pointing up again Rule 23.1's requirement of particularity of allegation. The complaint alleges that the "funds" participated in the conspiracy, but does not specify in what manner. What is basically important, the complaint does not allege that those who were unaffiliated directors at the time of suit participated; viz., that the unaffiliated directors who would have voted on plaintiff's demand in 1968, had he made one, were the same ones (and hence, assertedly, impervious to a demand) that composed the boards when the contracts in question were approved.

There is no burden on the court to make such assumptions. Were we, in disregard of the rule, to add to the complaint, we could only wonder whether we were not making interpolations that plaintiff could not in good faith sustain. Plaintiff's explanation made in argument why he sued only the affiliated directors, whatever its value, cannot meet his burden of showing that as to the majority of the board at the time of suit demand would have been futile. Even were we mistaken with respect to our next point, on which, essentially, he grounds his claim of particularity, there

are thus no sufficient allegations of futility relating to a majority of the board.

■ 3. *Approval by the directors of action alleged to be injurious to the corporation is not sufficient to excuse demand, except in circumstances not here alleged.* ·

■ There is a further reason that, in the light of the extensive argumentation that has been made to us, we feel we should deal with. Even if we could assume that there had never been a change in the complement of the boards of directors, and that those who were the directors at the time of the suit had approved of the transactions presently attacked, it would not follow that mere prior participation would excuse making the demand. Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' "wrongdoing" and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed. In fact, only a single court, see ¶ 2 of n.6, post, has held otherwise.

In this respect, the nature of the alleged misconduct must be considered. Logic suggests a sharp distinction between a transaction completely undirected to a corporate purpose and one which, while perhaps vulnerable to criticism, is of a character that could be thought to serve the interests of the company. If the transaction attacked was one solely for the benefit of minority, interested directors—taking out a sham loan, trading in worthless real estate—the approval of the other, nominally disinterested, directors is prima facie inexplicable. If a director goes along with a colleague in an act on its face advantageous only to

that colleague and not to the corporation, this in itself is a circumstance, or particularity, supporting the claim that he is under that colleague's control. It may be assumed that he would remain so when the directorate votes on plaintiff's demand. *See* Meltzer v. Atlantic Research Corp., 4 Cir., 1964, 330 F.2d 946, cert. denied sub nom. Sloan v. Meltzer, 379 U.S. 841, 85 S.Ct. 80, 13 L. Ed.2d 47. It does not follow, however, that a director who merely made an erroneous business judgment in connection with what was plainly a corporate act will "refuse to do [his] duty in behalf of the corporation if [he] were asked to do so." Bartlett v. New York, N. H. & H. R. R., 221 Mass. at 536, 109 N.E. at 455. Indeed, to excuse demand in these circumstances—majority of the board approval of an allegedly injurious corporate act—would lead to serious dilution of Rule 23.1.

A minority stockholder, unless his claim is worthless on its face, necessarily alleges some illegal transaction or conduct harmful to the corporation. If demand is to be excused merely because the directors participated, the same could be said with respect to those who had failed to oppose, or, indeed, who, as new directors, had merely neglected to take action against their predecessors. If by plaintiff's merely alleging error, the directors are to be presumed incapable of exercising sound business judgment, Rule 23.1 would become virtually meaningless—a stockholder would be entitled to try the case on the merits, (viz., to establish that the fees were excessive, or improperly arrived at, or in violation of the antitrust laws) to show that he had a right to bring it.[5]

5. We do not accept as contrary the case of Smith v. Sperling, 1957, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205. The sole question there raised, commencing with a 30-page opinion of the district court, 117 F.Supp. 781, was whether the corporation, as an indispensable party, was to be realigned as party plaintiff for jurisdictional purposes when it was found by the district court, after taking testimony, not to be antagonistic to plaintiff's claim. It is true that the Supreme Court, in discussing plaintiff's failure to make a demand, relied on the allegation that all of the directors had approved the contracts complained of. However, it made no reference to the nature of the contracts, nor to the interest *vel non* of the directors. In addition, it noted that other reasons were asserted for failure to make demand.

The conduct alleged in the present case was not, vis-a-vis the individual funds, undirected to a legitimate corporate purpose. The selection of an adviser, and a decision to compensate him, is obvious corporate business for a mutual fund. There is no facial impropriety in determining payment by a formula. A court sitting in Boston can take judicial notice that testamentary and indenture trustees are commonly compensated on a formula basis. Selection of a particular formula, of course, may be improper, and the underlying business judgment may be sufficiently unsound to call for correction. But it does not follow that it is to be conclusively presumed in such a case that an unaffiliated, or disinterested director, if demand were made upon him, would be unable to exercise an independent judgment in considering what new course to take.[6] See Ash v. International Business Machines, Inc., 3 Cir., 1965, 353 F. 2d 491, cert. denied, 384 U.S. 927, 86 S. Ct. 1446, 16 L.Ed.2d 531.

Nor do we think that an exception is to be made in the case of unaffiliated directors of a mutual fund on the ground that since they are expected to be sensitive to misconduct of this variety they are automatically incapacitated from performing their duties—their approval or acquiescence making them "wrongdoers"—once a stockholder alleges a corporate injury stemming from the adviser-fund relationship. Apart from the fact that this, again, would enable a plaintiff to try his case on the merits in order to determine whether he had a right to bring it, it would be a misconception of the nature of unaffiliated directors. Normally self-dealing by any corporate directors is suspect. Congress recognized, however, that a certain type of self-dealing is endemic in a mutual fund, and must be permitted. In order to make sure that the directorate not be top-heavy, it provided for a minimum number of directors who would not be so interested. We do not believe it should follow from this that, as directors required to be disinterested in a particular transaction, they differ in their fiduciary obligations from a disinterested directors in any other corporate venture. All disinterested directors must "act honestly and according to their best judgment for the interests of all." Corbus v. Alaska Treadwell Gold Mining Co., 1903, 187 U.S. 455, 463, 23 S.Ct. 157, 160, 47 L.Ed. 256. When corporate action, or inaction, is subsequently challenged, their duty is not extinguished, but, rather, refocused. After a demand provides them with "full knowl-

---

6. Plaintiff, following argument, has cited Jannes v. Microwave Communications, Inc., N.D.Ill., 1972, 57 F.R.D. 18, a Rule 10b–5 misrepresentation case (15 U.S.C. § 78j(b)). We do not find it helpful. In the first place the court, in finding the derivative complaint sufficient, said it applied "the usual standard of whether any set of facts can be shown which would prove futility," 57 F.R.D. at 21, citing a Fifth Circuit decision which, in turn, purported to rely, as does the present plaintiff elsewhere, on Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. Conley, which dealt only with F.R.Civ.P. 8 "notice pleading," is no authority for such an interpretation for Rule 23.1. More important, the Jannes court said that even a strict standard showed "self interest" on the part of all of the directors. We cannot similarly distinguish the recent case of Papilsky v. Berndt, S.D.N.Y., 59 F.R.D. 95. We do, however, note that the authorities cited do not, in fact, support the decision. Thus in Cathedral Estates v. Taft Realty Corp., 2 Cir., 1955, 228 F.2d 85, the corporate conveyance was by a majority of the directors to a corporation completely controlled by them. In Dopp v. American Electronic Laboratories, Inc., S.D.N.Y., 1972, 55 F.R.D. 151, the complaint contained specific allegations beyond the conclusion that the directors had approved the transaction. And as to the case which the court regarded as most directly in point, Liboff v. Wolfson, 5 Cir., 1971, 437 F.2d 121, in addition to the fact that we believe the Fifth Circuit confuses Rule 23.1 with notice pleading, the court specifically noted, at p. 122, that the "defendants-appellees conceded on oral argument that . . . a majority of the board . . . [met the description of 'ownership and control'] as to them."

edge of the basis for the claim," Halprin v. Babbitt, 1 Cir., 1962, 303 F.2d 138, 141, it is for the directors, who have "the advantage of familiarity with the enterprise, with those who have conducted it and with the record of success or failure" to decide on the appropriate corporate response. Pomerantz v. Clark, 101 F.Supp. at 344. To the extent that they are "watchdogs" they should be given the opportunity, not deprived of it.

We recognize the social desirability of bona fide, well founded minority suits. We also recognize the tremendous waste involved in suits that are not well founded. We do not accept the dictum in deHaas v. Empire Petroleum Co., 10 Cir., 1970, 435 F.2d 1223, at 1228, that "[c]ourts have generally been lenient in excusing demand" if it is to be applied to allegations as substantively deficient as the present. Such easy remarks overlook the requirement that the directors' "antagonism . . . be unmistakable." Delaware & Hudson Co. v. Albany R. R. If, as plaintiff suggests, this frustrates his ability to prosecute a worthwhile suit, the answer is that he was not entitled to bring it.

No further question need be reached. In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is "without prejudice." This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action." Restatement of Judgments § 49, comment b, at 195 (1942). See Acree v. Air Line Pilots Assoc., 5 Cir., 1968, 390 F.2d 199, 203, cert. denied, 393 U.S. 852, 89

S.Ct. 88, 21 L.Ed.2d 122; Estevez v. Nabers, 5 Cir., 1955, 219 F.2d 321, 324; 1B Moore's Federal Practice ¶ .405 [5]. Cf. Stoll v. Gottlieb, 1938, 305 U.S. 165, 171–172, 59 S.Ct. 134, 83 L.Ed. 104; Stuhl v. Tauro, 1 Cir. 1973, 476 F.2d 233.

Affirmed.

COFFIN, Chief Judge (concurring).

I concur in the judgment of affirmance. While agreeing that unsupported allegations of domination of a majority by a minority are insufficient, I would, but for one defect, find such support in the allegations that the named defendants, which include the mutual funds (and necessarily their boards of directors), "acquiesced, encouraged, cooperated and assisted in the effectuation and maintenance" of the conspiracy to establish exorbitant basic fee agreements benefiting fund advisers (and thus affiliated directors) to the detriment of the funds and in violation of the antitrust laws. But I view as fatal the absence of an allegation or indication in the affidavits, to use the court's phrasing, "that the unaffiliated directors who would have voted on plaintiff's demand in 1968, had he made one, were the same ones (and hence, assertedly, impervious to a demand) that composed the boards when the contracts in question were approved." We cannot assume that new unaffiliated directors would be unwilling to reconsider the wisdom or legality of their predecessors' actions and, if appropriate, bring suit.

I would, however, not go so far as the court does in delineating "the sharp distinction", for purposes of excusing demand under Rule 23.1, between actions which "could be thought to serve the interests of the company" and those of a fraudulent or self-dealing nature. The distinction has not been so articulated in almost a century of derivative suit jurisprudence, although concededly most of the prominent cases have involved just such factual situations. Yet the language of a number of cases traces a

wider compass.* Moreover, these are times when corporations are exceeding in size and impact even the giantism of the past, when new layers and dimensions of corporate obligation are being recognized, and when the importance of directorate oversight of the management technocracy is greater than ever. A higher degree of professionalism, sensitivity, and scrutiny may fairly be expected on the part of directors today than in a simpler era. I am therefore reluctant, by resort to formula, to set boundaries to the action or inaction of directors, beyond which demand on them shall always be required.

Even if, however, such boundaries can be justified for corporate directors in general, on the supposition that they can reverse gears on a course previously undertaken once attention is refocused by an allegation that it constitutes a wrong to the corporation, the broad extension of "first refusals" to unaffiliated or independent directors of mutual funds would seem singularly inappropriate. For I believe, unlike the court, that the unaffiliated directors of mutual funds have a higher obligation of inquiry than directors of ordinary corporations, at least as to the type of transaction under assault here. As we said in Moses v. Burgin, 445 F.2d 369, 376 (1st Cir. 1971), Congress intended that these board members act as "independent watchdog directors". The primary object of their surveillance is, patently, transactions between the funds and the investment advisers in which the other directors are personally interested. Their raison d'etre is acute scrutiny of the very contracts here attacked.

These contracts, additionally, are major corporate actions from any perspective. It thus seems reasonable to assume that the directors would be given advance notice of at least their final content and of the meeting at which they would be considered. Whatever the significance for excusing demand of mere knowing acquiescence in impending major corporate actions in other settings, *see Liboff, supra,* I believe that such passive acceptance by unaffiliated directors of the very transactions which justify their place on the directorate would be sufficient involvement or subservience to find them unlikely to respond meaningfully to a demand. Here, there are no allegations regarding the meetings and the actual votes on the challenged fees or the relevant corporate quorum rules. But whether one assumes that action by a majority of the total membership or merely a majority of those actually present is required, clearly some unaffiliated directors either voted for the contracts or failed to vote, in person or by proxy, or appear at the appropriate meeting. Under my view, this would be

---

* Delaware & Hudson Co. v. Albany & Susquehanna R.R., 213 U.S. 435, 451, 29 S.Ct. 540, 545, 53 L.Ed. 862 (1909) ("good faith . . . need not be questioned") ; United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 264, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917) ("no allegation that . . . directors . . . have been guilty of any misconduct whatsoever") ; Smith v. Sperling, 354 U.S. 91, 95, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957) ("There is antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks. The charge normally is cast in terms of fraud, breach of trust, or illegality") ; Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir. 1955) ("where the directors . . . are . . . involved in the transaction attacked, a demand on them is presumptively futile and need not be made") ; Ash v. International Business Machines, Inc., 353 F.2d 491, 493 (3d Cir. 1965) ("the stockholder shall allege . . . that the directors of the corporation are personally involved . . . in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation") ; Liboff v. Wolfson, 437 F.2d 121, 122 (5th Cir. 1971) (the complaint, held to "fully meet the requirements of the rule", alleged "The majority of said directors, participated, approved of and acquiesced in said transaction") ; Papilsky v. Berndt, 59 F.R.D. 95 (S.D.N.Y., 1973) (allegation that "the directors participated or acquiesced in the wrongs alleged" held sufficient).

enough to excuse demand, had it been alleged that the unaffiliated membership was the same at both contract-making and demand time.

I also note that the management fee contracts are not attacked as simply ultra vires or as the product of mere negligence or even of "unsound" or "eroneous business judgment". They are alleged to be illegal under federal antitrust laws. If I were to calibrate a scale to measure the impact of varying improprieties, I would rate such an allegation fairly high. I find it hard to imagine that a director, however, unaffiliated, who had participated, or under these circumstances knowingly acquiesced, in a major transaction, albeit for a corporate purpose, would authorize a suit, effectively against himself, claiming that the transaction violated the federal antitrust laws. Even independent watchdogs cannot be thought ready to sign a confession of that magnitude.