**Millicent JONES, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES et al., Defendants.**

**No. 73 Civ. 1701.**

United States District Court, S. D. New York.

Feb. 14, 1975.

**5.** 27 C.F.R. Section 178.127 (1975).

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff; Eric L. Keisman, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants The Equitable Life Assur. Soc. of United States, Thomas F. Murray, Donald R. Waugh, Jr., Howard E. Thomas, Grant Keehn, Walter R. Knortz; Jay H. Topkis, Cameron Clark, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Thomas M. Macioce, Robert C. Tyson, John C. Whitehead; Henry L. King, Mark L. Austrian, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant The Equitable Life Mortgage and Realty Investors; Edward J. Reilly, Richard Tufaro, New York City, of counsel.

WYATT, District Judge.

This is a motion for various forms of relief (to be separately considered) by defendants The Equitable Life Assurance Society of the United States (Life), Murray, Waugh, Thomas, Keehn, and Knortz; by defendants Macioce, Tyson and Whitehead; and by defendant The Equitable Life Mortgage & Realty Investors (the Trust). Affidavits have been submitted by defendants Waugh and Whitehead. Defendant Tyson, a movant, died after service of notice of the motion and on consent of plaintiff the action has been dismissed as to him.

It is undisputed that the Trust was organized as a Massachusetts business trust (Mass.Ann.Laws C. 182, § 1 and following (1969)) under a Declaration of Trust executed September 15, 1970. For a brief description of such a trust, see Dewing, The Financial Policy of Corporations (5th ed.) 70–73. Interestingly, such a trust was employed originally because under the mortmain statutes, corporations could not hold real estate for investment.

Life is a large, old, and well known mutual insurance company. Life sponsored the organization of the Trust and has acted as its investment adviser under an Advisory Contract (the Contract). Life is registered as an investment ad-

viser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. § 80b–1 and following; "the Act"). Averments to the contrary in the complaint were admitted at oral argument to be in error.

## The Complaint

Plaintiff sues as a shareholder of the Trust. The complaint states eight separate claims, each called (presumably from state court practice) a "cause of action". The action was commenced on April 17, 1973.

The first four claims are brought derivatively for the benefit of the Trust. The last four claims are brought for a class, the shareholders of the Trust, but at oral argument counsel for plaintiff agreed that these four claims should be dismissed.

The first claim avers that Life controls the trustees of the Trust, that the Contract is illegal because Life is not registered under the Act (as noted above, this is conceded to be an error), that the Contract is unfair and provides for excessive compensation, and that defendants have violated the Act in that they have engaged in fraud.

The second claim is that the Trust bought its initial portfolio from Life, that there was self dealing, that the price was unfair to the Trust, and that the profits to Life were unlawful because they were more than the compensation called for under the Contract.

The third claim is that Life caused the Trust to make loans to Allied Stores, that these loans were unfair and fraudulent, and that they were made because a trustee was president of Allied Stores.

The fourth claim is that Life has not given good advice to the Trust, has kept the best investments for itself, and has thus violated the Contract.

The complaint is not well drawn and violates Fed.R.Civ.P. 8(a) in that there is no "short and plain statement of the claim." Jurisdiction seems to be based on the Act and also on pendent jurisdiction but which claims are thought to

arise under the Act and which are pendent state law claims is never explained. The best guess has to be that the pleader attempts to invoke both jurisdictional grounds for *each* claim.

It is noted that the Trust, for whose benefit the first four claims are purportedly brought, is itself a movant for dismissal. Inquiry as to this position was made at oral argument. The response is remembered as having been that the best interests of the Trust would not be served by setting aside the Advisory Contract, as plaintiff demands, because this would mean—among other things— loss of the advice of and connection with Life and loss of the right of the Trust to use the word "Equitable" in its name.

## I. Want of Subject Matter Jurisdiction

 Movants assert that the Act does not confer jurisdiction over actions by private persons for damages or for an accounting. While movants make arguments of substance for this position and District Courts in Florida and California have sustained it, Judge Metzner has recently held that a private action for damages may be brought under the Act. *Bolger v. Laventhol, and others*, 381 F.Supp. 260 (S.D.N.Y.1974). See Note, Securities-Investment Advisers Act of 1940—Private Right of Action for Damages Allowed Against an Investment Adviser and His Accountant, 18 Fordham Law Rev. 493 (1974). On the basis of Judge Metzner's opinion, the motion in this aspect is denied.

## II. Failure to Make Demand on Trustees or Shareholders

### A. Trustees

The action was commenced on April 17, 1973.

According to a moving affidavit, not opposed or disputed by plaintiff, there were nine trustees when the action was commenced. Three of these (Murray, Waugh, Thomas) were affiliated with Life; six of these (Adams, Crow, Macioce, Tyson, Whitehead, Witcoff) were not affiliated with Life. Of the nine

trustees described, eight were named as individual defendants; Witcoff was not named as a defendant.

No demand that an action be brought was made by plaintiff on the Trustees.

Rule 23.1 of the Federal Rules of Civil Procedure requires that the complaint in a derivative action allege "with particularity" the efforts made by plaintiff to obtain the desired action from the directors or "comparable authority" (such as trustees) and the reasons "for not making the effort".

In the complaint at bar, the reason for not making any demand on the trustees is said (para 25) to be that it would have been futile because the trustees are "dominated and controlled" by Life, and because "the trustees are themselves defendants in this action".

■ It seems evident that no facts are averred in the complaint to show that those trustees not affiliated with Life were under the control of Life. There is the mere statement of conclusion of plaintiff, which is not sufficient. *Brody v. Chemical Bank*, 482 F.2d 1111 (2d Cir.), cert. denied, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); *Greenspun v. Lindley*, 44 A.D.2d 20, 352 N.Y.S.2d 633 (1st Dept. 1974).

It is true that all but one of the independent trustees are themselves named as defendants in the action, but surely the strong policy of Rule 23.1 cannot be satisfied by simply adding the trustees as defendants. The real defendant is Life, which is amply able to respond to any judgment. The addition of the trustees, certainly the unaffiliated trustees, must have been with the hope that thereby Rule 23.1 could be satisfied.

At the time this action was commenced, six of the then nine trustees had no connection with Life (the Declaration of Trust provides (Section 3.3) that not more than 49% of the trustees (or of any "investment Committee") may be "affiliates" of Life).

■ The demand normally required by Rule 23.1 is not, in my view, excused merely because the independent trustees are joined as defendants and without any averments to show any conflict of interest or bias on their part. In the *Brody* and *Kauffman* cases, above cited, it does not appear that the independent directors (trustees) were defendants. In the *Greenspun* case, above cited, the independent trustees were defendants and the Court found that this did not excuse a demand on them. Indeed, the *Greenspun* case is virtually the same case as that at bar; the fact background and the complaints appear to be substantially the same, the only differences being that another insurance company was the investment adviser in *Greenspun* and another Massachusetts business trust was involved.

The opinion of Judge Tyler in *Papilsky v. Berndt*, 59 F.R.D. 95 (S.D.N.Y.1973) does seem to reach a conclusion contrary to the *Brody*, *Kauffman*, and *Greenspun* decisions. There are some distinguishing differences, particularly in that the complaint before Judge Tyler averred that control by the affiliated directors was due to their "strategic positions" on the Board. The Court of Appeals did not decide whether Judge Tyler was correct or not but dismissed the appeal. 503 F.2d 554 (May 24, 1974); CCH Fed.Sec.L. Rep. ¶ 94,575. The Court of Appeals, in so doing, specifically stated: " . . . of course we do not reach the merits". The Court of Appeals for the First Circuit did consider Judge Tyler's opinion and referred to it in the *Kauffman* opinion, observing that the authorities cited by Judge Tyler "do not, in fact, support the decision" (479 F.2d at 266, fn. 6). As already indicated, the *Brody* decision of the Court of Appeals for this Circuit seems to require that a demand be made by plaintiff in the case at bar.

With one exception, there is nothing averred which would suggest any self-dealing, self-interest, personal gain, or selfish motive on the part of the independent trustees. For all that appears, they are, have been, and will be, faithful

to the interests of the Trust. Giving the most liberal interpretation to the complaint, the independent trustees are charged with no more than approval and ratification of transactions proposed (accepting the complaint) by Life. There is no averment that any personal benefit flowed to them.

The one exception is the third claim which avers that the Trust has made two loans to a subsidiary of Allied Stores Corporation, of which trustee and defendant Macioce is President. There is also an averment (para 36(b)) that Macioce "received benefits to which he was not lawfully entitled"; what this means is not made clear, whether Macioce was simply benefitted in a general way because the company of which he is president obtained the loans or whether Macioce was paid money personally; there is no affidavit by Macioce nor for the plaintiff.

In any event, the Declaration of Trust (Section 2.17) specifically permits the loans to Allied Stores, provided that full disclosure is made and that the transaction is approved by a majority of the trustees or of an investment committee who are not affiliated with a party to the transaction. It is undisputed that this section of the trust instrument was followed in the Allied Stores loans and that Macioce took no part in the actions of the Trust in this connection. Moreover, the loans to Allied Stores and the connection with Allied Stores of trustee Macioce were fully disclosed in the proxy statements sent to shareholders of the Trust before the Annual Meetings on March 2, 1972 and March 1, 1973—well before this action was commenced. There is nothing in the record to show that Macioce was not an independent, unaffiliated trustee.

If it were assumed, however, that the claim on the Allied Stores loans would excuse a demand so far as Macioce is concerned, it would still leave a majority of the trustees (5 out of 9) as independent of Life.

## B. Shareholders

Rule 23.1 also requires that the complaint allege "with particularity" the efforts made by plaintiff, "if necessary", to obtain from the shareholders the action desired and the reasons "for not making the effort".

Admittedly plaintiff made no demand on the shareholders. The reason for not making any such demand is said (para 26) to be that it would have been futile because the trustees decide about the "bringing of suit", because if the shareholders authorized the bringing of suit it would then be in hostile hands, and that the Trust has 2,600 shareholders and to engage in demand on them would "cast an unconscionable financial burden on the plaintiff". These reasons are not believed to be sufficient.

The Declaration of Trust (Section 9.3(d)) specifically authorizes the shareholders to vote "as to whether or not a court action, proceeding or claim should be brought or maintained derivatively". They are to vote in this respect "to the same extent as the shareholders of a Massachusetts business corporation". It is clear that under Massachusetts law demand must be made on shareholders of a business corporation before a derivative action may be brought. *Pomerantz v. Clark*, 101 F.Supp. 341 (D.Mass.1951).

In this Circuit, the rule is that this Court should look to the state law (here, Massachusetts) "to determine whether a demand on stockholders is necessary". *Brody v. Chemical Bank*, above cited, at 1114. A decision in the First Circuit, *Levitt v. Johnson*, 334 F.2d 815 (1964), cert. denied, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965), declined to apply Massachusetts law in this respect to an action under the Investment Company Act of 1940 (15 U.S.C. § 80a–1 and following) but this decision was before the *Brody* decision by our Court of Appeals—a decision in a case under the Securities Act of 1933—and my duty is to follow the *Brody* decision.

*Greenspun v. Lindley*, above cited, also requires demand on the shareholders of a Massachusetts business trust.

### III. Summary Judgment

■ The movants ask for summary judgment on the first three claims. Presumably this summary judgment would be in favor of movants on the federal claims under the Act, leaving state claims which could be either retained under the doctrine of pendent jurisdiction or dismissed without prejudice to their assertion in a state court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The first claim is basically that the Advisory Contract is unfair and provides for excessive compensation to Life.

The second claim is that the purchase of the initial portfolio was at an unfair price and resulted in unlawful profits to Life.

The third claim was that loans to Allied Stores were unfair and fraudulent.

These claims are sought to be made federal in character as violations of Section 206 of the Act (15 U.S.C. § 80b–6) which in relevant part makes it unlawful for an investment adviser (such as Life) to practice "fraud or deceit upon any client or prospective client". It may be noted that the cited section of the Act is applicable only to an "investment adviser"; Life is the only defendant who is such. There may be some theory of a federal claim against the individual defendants that they aided and abetted violations of the Act by Life but no such theory appears in the complaint and such a theory would seem to be inconsistent with the complaint.

The affidavits submitted by movants, not opposed or disputed, establish that there was never any misrepresentation or concealment with respect to the matters in the first three claims but on the contrary that they were fully disclosed to the shareholders in the prospectus and in at least three proxy statements. There might be some claim under state law for excessive compensation, for mismanagement or the like but on the admitted facts here clearly there can be no federal claim for "fraud or deceit" under the Act. In so concluding, consideration has been given to *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), the principles of which are not believed to be inconsistent with the conclusion.

The motion for summary judgment for movants on the first three claims must be granted. The state law claims will be dismissed without prejudice to their assertion in a state court.

### IV. Failure to State the Circumstances Constituting Fraud

■ The claims of plaintiff must be dismissed for the reasons already given. It may be noted, however, that the statement of these claims violates Fed.R. Civ.P. 9(b) in that the "circumstances constituting fraud" are not "stated with particularity".

It is necessary for plaintiff to charge "fraud or deceit" under the Act if she is to state a federal claim. She so states in virtually the words of the Act but does not comply with Rule 9(b) because her averments are mere conclusions; there are no averments of fact showing fraud or deceit. *Segal v. Gordon*, 467 F.2d 602, 606–08 (2d Cir. 1972).

The violation of Rule 9(b) would require dismissal of the first four claims.

### V. Summary

The motion is granted to the extent hereafter indicated.

The fifth through eighth claims, with the consent of plaintiff, are dismissed for failure to state a claim upon which relief can be granted.

Summary judgment on the federal claims in the first three counts is granted in favor of movants for the reasons set forth in part III of this opinion, and alternatively for failure to make a demand on the trustees and shareholders of the Trust.

Summary judgment on the federal claims in the fourth count is granted in favor of movants for failure to make a demand on the trustees and shareholders.

The federal claims in the first four counts are dismissed for failure to state with particularity the circumstances constituting the fraud alleged in each of these counts. Leave to amend need not be considered because these counts are also being dismissed for another reason or other reasons.

Any claims under state law are dismissed in the exercise of discretion to decline pendent jurisdiction, among other reasons because "state issues substantially predominate". *United Mine Workers v. Gibbs*, above cited, 383 U.S. at 726, 86 S.Ct. 1130. This is without prejudice to their assertion in a state court.

The motion is in other respects denied.

Settle order and judgment on notice.