**Jeffrey A. BOYKO, Plaintiff,**

v.

**The RESERVE FUND, INC. and Reserve Management Corporation, Defendants.**

No. 74 Civ. 3419.

United States District Court, S. D. of New York.

Sept. 29, 1975.

Milberg & Weiss, New York City, for plaintiff; Melvyn I. Weiss, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant The Reserve Fund, Inc.; Stephen A. Weiner, New York City, of counsel.

Neale F. Hooley, New York City, for defendant Reserve Management Corp.

## OPINION

GAGLIARDI, District Judge.

This motion to dismiss the complaint raises novel questions concerning the relationship between Section 36(b) of the Investment Company Act of 1940 ("Act"), 15 U.S.C. § 80a–35(b), and Rule 23.1, Fed.R.Civ.P.

The nominal defendant in this derivative action is The Reserve Fund, Inc. ("the Fund"), an open-end diversified investment company principally engaged in the business of investing cash funds from individual investors in marketable obligations of the United States and its agencies, and in depository-type obligations and acceptances of banking institutions. Defendant Reserve Management Corporation ("Management"), serves as the investment advisor to the Fund and is compensated on a flat percentage basis of one-half of one percent of the Fund's assets. Plaintiff, a shareholder of the Fund, brings this action derivatively, on behalf of the Fund, pursuant to Section 36(b) of the Act. 15 U.S.C. § 80a–35(b). Jurisdiction is predicated upon Section 44 of the Act. 15 U.S.C. § 80a–43.

The complaint alleges two causes of action and seeks an accounting and other equitable relief. The first claim charges that the compensation received by Management under its contract with the Fund "has become and will continue to be excessive and unreasonable in the light of the mushrooming growth of the Fund assets and the minimum number of investment judgment decisions and volume of advice required from the Manager to keep said assets invested in the money market instruments utilized by the Fund." Complaint, Paragraph 18. It is further alleged that Management has breached its fiduciary duty to the Fund and its shareholders by not taking action to reduce its fee, by preventing the Fund from terminating the management contract, and by failing to disclose certain facts to the shareholders of the Fund.

The second claim challenges the validity of certain resolutions adopted at the 1974 Annual Meeting of Shareholders of the Fund concerning an increase in the authorized capital of the Fund from

1,000,000,000 shares of 1/10¢ par value to 50,000,000,000 shares and the ratification of the management contract for another year. It is alleged that the proxy statement for such meeting failed to state that such matters would be brought before the meeting and that the sole purpose of the resolutions was to benefit Management by substantially increasing its fees without benefit to the Fund or its shareholders.

The instant motion to dismiss is grounded upon plaintiff's alleged failure to satisfy the requirement of Rule 23.1, Fed.R.Civ.P., that the complaint in a shareholders' derivative action "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority . . . and the reasons for his failure to obtain the action or for not making the effort." The complaint here alleges that there are six directors of the Fund of whom two are also directors of Management and own all of its stock. The complaint further alleges that "[n]o demand has been made by the plaintiff upon the Fund and its Directors to institute and prosecute this action against the defendants because the Directors are designees, nominees and persons controlled by defendant Manager and they have participated and acquiesced in the wrongs complained of in this action, and their approval of and initiation of an action like the instant one would place prosecution of this action in the hands of persons friendly to the defendant." Paragraph 20. Nothing beyond this is alleged with respect to plaintiff's failure to make a prior demand upon the board.

In support of their motion to dismiss, defendants place considerable reliance upon the opinion in *In Re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973). *Kauffman* is similar to the instant case in that the plaintiff in *Kauffman* was a shareholder in certain mutual funds suing derivatively on their behalf; the claim there was that "defendant fund directors, who were also affiliated with investment advisors, conspired with funds, advisers, and others to set excessive noncompetitive management fee schedules based solely on the average net assets of the funds." 479 F.2d at 261. The Court of Appeals upheld a district court decision dismissing the action for failure to allege sufficient reason to excuse a prior demand on the directors.

Of the reasons pleaded for not making a demand upon the directors in *Kauffman*, two of them are similar to those alleged in the instant case: (1) that the directors of the Fund are controlled by Management; and (2) that the directors of the Fund have participated and acquiesced in the wrongs complained of in the action. The first excuse was held in *Kauffman* to be conclusory and, therefore, insufficient to meet the "particularity" requirement of Rule 23.1. "Plaintiff must allege specific facts demonstrating the unmistakable link between the unaffiliated majority and the affiliated and allegedly wrongdoing minority." 479 F.2d at 264. As in *Kauffman*, the complaint here contains only conclusory allegations of control by a self-interested, affiliated minority. With regard to the second excuse, *i. e.*, participation and acquiescence in the alleged wrongdoing, the *Kauffman* court held that an allegation of "mere approval of the corporate action, absent self-interest or other indication of bias" is insufficient to excuse demand. 479 F.2d at 265. Again, the instant complaint contains no specific factual allegations of bias on the part of the unaffiliated majority.

Thus, under the traditional pleading requirements of Rule 23.1 as set forth in the *Kauffman* opinion,[1] the pertinent allegations of the instant complaint would be insufficient to excuse prior demand

---

1. The *Kauffman* case has been cited with approval by the Second Circuit. *See Brody v.* *Chemical Bank*, 482 F.2d 1111, 1114 (2d Cir. 1973).

on the board of the Fund. It is important to note, however, that the rules stated in *Kauffman* are applicable to derivative actions in general and are not peculiar to actions brought on behalf of mutual funds against their investment advisors for excessive compensation. The *Kauffman* court noted that certain provisions of the Act, which were designed to insure that at least 40 per cent of the directors on the board of an investment fund be independent, reflected a Congressional recognition "that a certain type of self-dealing is endemic in a mutual fund, and must be permitted." 479 F.2d at 266. It went on to state, however, that "[w]e do not believe it should follow from this that, as directors required to be disinterested in a particular transaction, they differ in their fiduciary obligations from a disinterested directors [sic] in any other corporate venture." *Id.* The court, therefore, declined to adopt a presumption of futility of making a demand in a derivative action brought on behalf of a mutual fund against its advisor and adhered to the traditional pleading requirements.

As noted, the allegations of the instant complaint are in many ways similar to those in *Kauffman*. The actions differ, however, in at least one significant respect—the *Kauffman* action was commenced prior to the effective date of a recent amendment to the Act. Plaintiff brings this action pursuant to Rule 36(b) of the Act, which became effective on June 14, 1972 and states that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser." Pub.L. No. 91–547, 15 U.S.C. § 80a–35(b). In creating this explicit fiduciary duty, Congress recognized the unusual relationship between the investment company and its advisor:

> Because of the unique structure of this industry the relationship between the mutual funds and their investment adviser is not the same as that usually existing between buyers and sellers or in conventional corporate relationships. Since a typical fund is organized by its investment adviser which provides it with almost all management services and because its shares are bought by investors who rely on that service, a mutual fund cannot, as a practical matter sever its relationship with the adviser. Therefore, the forces of arm's-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy.

1970 U.S.Code Cong. & Admin.News, pp. 4897, 4901.

As a mechanism for judicial enforcement, Section 36(b) authorizes the bringing of an action "by the Commission [SEC], or by a security holder of such registered investment company on behalf of such company" for breach of the specified fiduciary duty. The statute does not expressly authorize the commencement of such an action by the investment company itself. Indeed, while there are numerous references to the right of the SEC or a shareholder to bring an action, nowhere in the legislative history of Section 36(b) does an action by the directors of the Fund seem to be contemplated.[2]

---

2. This omission was apparently not the result of Congressional oversight. The legislative history of the amendments is relatively comprehensive, and the amendments themselves were enacted in the Senate only after a three-year period of extensive committee hearings and executive sessions on the subject matter. 1970 U.S.Code Cong. & Admin.News, p. 4897. Moreover, although Congress did not give the fund directors an express procedural role to play in a Section 36(b) action, the legislative history is not si-

█ █ It thus appears that in enacting Section 36(b) Congress assumed that the directors of the investment company would be antagonistic toward, and unlikely to prosecute, an action against the Fund's advisors for breach of fiduciary duty with respect to the receipt of compensation. In the instant case, the Fund admits its opposition to the lawsuit and argues that a decision of its board not to prosecute the action would be conclusive, thus precluding a shareholder from asserting the claims derivatively. While this rule might be appropriate in other kinds of derivative actions, its application in this context would clearly thwart the purpose of Congress in enacting Section 36(b) since a majority of the board of an investment company is rarely composed of "interested persons" and tangible indications of bias on the part of the unaffiliated majority are rarely present. As stated in the legislative history, control of a mutual fund by its advisor is the result of intangible factors arising out of the unique structure of the industry. If the legislative analysis of the mutual fund industry is accurate, which must be assumed, a strict application of a common law rules designed to enforce the particularity requirement of Rule 23.1 would doubtless mandate the dismissal of most, if not all, derivative actions commenced under Rule 36(b). General allegations of bias and control will ordinarily not suffice to excuse demand. *See In Re Kauffman Mutual Fund Actions, supra.*

█ The court therefore concludes that, where there is at least one affiliated or interested director on the board of a mutual fund, the futility of making a demand on the entire board in an action brought by a shareholder pursuant to Section 36(b) will be presumed. Such a holding does not undermine the policy underlying Rule 23.1, Fed.R.Civ.P., which recognizes the extraordinary nature of the stockholder's derivative action. *See Brody v. Chemical Bank,* 66 F.R.D. 87 (S.D.N.Y.1974), *aff'd,* 517 F. 2d 932 (2d Cir. 1975). Rather, it is in keeping with a legislative recognition of the unique structure of a mutual fund industry as reflected by the terms of Section 36(b) of the Act. The derivative action designed expressly to enforce the specific fiduciary duty created by Rule 36(b) should not be rendered meaningless by an application of the more general provisions of Rule 23.1 and the case law generally applicable to derivative actions.

The conclusion reached by this court is not to be construed as a holding that Rule 23.1 has been in any way abrogated by Section 36(b). Rule 23.1 merely requires that reasons for not making a prior demand on the board of directors in a derivative action be pleaded. Whether or not the reasons pleaded are sufficient to excuse demand is a matter which has been left to the courts. The standards developed by the courts over the years are founded upon deep-rooted policies and are sound. However, in enacting Section 36(b), Congress has created a new type of derivative action, which is designed to keep in check certain unique problems and abuses which have developed in a relatively new industry. The common law rules which have evolved to enforce the demand requirements in derivative actions are not to be blindly applied to newly created derivative actions. What must be alleged in a

---

lent on the function of the fund directors in this area:

> Directors of the fund, including the independent directors, have an important role in the management fee area. A responsible determination regarding the management fee by the directors including a majority of disinterested directors is not to be ignored. While the ultimate responsibility for the decision in determining whether the fiduciary duty has been breached rests with the court, approval of the management fee by the directors and shareholder ratification is to be given such weight as the court deems appropriate in the circumstances of a particular case.

1970 U.S.Code Cong. & Admin.News, p. 4903.

Section 36(b) complaint to satisfy the requirement of Rule 23.1 is an issue which has not until this day been addressed by the courts[3]; and it is the holding of this court that the requirement of Rule 23.1 is met in a Section 36(b) action where it is alleged in the complaint that there is at least one "interested person", as that term is defined in Section 2(a)(19) of the Act, 15 U.S. C. § 80a–2(a)(19), on the board of directors of a mutual fund.

Accordingly, plaintiff has alleged sufficient reason for failure to make a demand upon the directors of the Fund, and the motion to dismiss is denied.

So ordered.

---

**3.** *Cf. Galfand v. Chestnutt*, 402 F.Supp. 1318 (S.D.N.Y.1975) (Demand in Section 36(b) action held after trial to have been futile).