Melvyn I. WEISS, Custodian for Gary Michael Weiss, U/NY/U.G.M.A., Plaintiff,

v.

TEMPORARY INVESTMENT FUND, INC., Provident Institutional Management Corporation, Shearson Loeb Rhoades, Inc., Russell W. Richie, Robert I. Fortune, James Louis Robertson, Henry M. Watts, Jr., Dr. Ralph A. Young, Thomas S. Gates, G. Willing Pepper, Defendants.

Civ. A. No. 80–230.

United States District Court, D. Delaware.

June 17, 1981.

**666**

Joseph A. Rosenthal, and Kevin Gross, Morris & Rosenthal, P.A., Wilmington, Del., for plaintiff; Daniel W. Krasner, and Robert Lewin, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, of counsel.

Rodman Ward, Jr., Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for defendant Temporary Investment Fund, Inc.

Robert K. Payson, Potter, Anderson & Corroon, Wilmington, Del., for defendant Provident Institutional Management Corp.; Peter M. Mattoon, Richard Z. Freemann, Jr., and John B. Langel, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

Charles F. Richards, Jr., Richards, Layton & Finger, Wilmington, Del., for defendant Shearson Loeb Rhoades, Inc.; David L. Foster, Richard E. O'Connell, and James B. Eisenberg, Willkie, Farr & Gallagher, New York City, of counsel.

S. Samuel Arsht, and William T. Allen, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants Richie, Fortune, Robertson, Watts, Jr., Young, Gates and Pepper; Morris R. Brooke, James M. Sweet, and James C. Ingram, Drinker, Biddle & Reath, Philadelphia, Pa., of counsel.

OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff Melvyn I. Weiss, acting as custodian for his son, Gary M. Weiss (jointly referred to as "Weiss"), is a shareholder of the Temporary Investment Fund, Inc. (the "Fund").[1] The Fund is a no-load, open end, diversified investment company whose objective is to maximize current income consistent with preservation of capital, and is commonly known as a "money market fund." Provident Institutional Management Corporation (the "Adviser"), a wholly owned subsidiary of Provident National Bank ("Provident"), serves as the Fund's investment adviser. Pursuant to a Sub-Advisory Agreement with its subsidiary, the Adviser, Provident National Bank supplies the Fund with all necessary investment advisory services. Shearson Loeb Rhoades, Inc. ("Shearson") is the underwriter for the Fund and, pursuant to an Administration and Distribution Agreement (the "Distribution Agreement"), has performed administrative functions for the Fund.

On May 7, 1980, Weiss brought this shareholder's derivative suit against the Fund, the Adviser, Shearson and seven directors of the Fund. In an amended complaint filed on January 7, 1981, Weiss alleges four separate causes of action. First, Weiss alleges that the Adviser and Shearson have breached their fiduciary duty under section 36(b) of the Investment Company Act of 1940[2] (the "Act") in that they have received

---

1. All facts are taken from the amended complaint and are presumed true for the purpose of defendants' motions to dismiss.

2. Section 36(b), 15 U.S.C. § 80a–35(b), provides in pertinent part:

[T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or

excessive and unreasonable compensation for the management services they have performed on behalf of the Fund. Second, plaintiff alleges that the Fund's Advisory Agreement and Distribution Agreement are void because they were the product of the directors' breach of their fiduciary duties to the Fund, because the Adviser and Shearson dominated and controlled the conduct of the directors in connection with the approval of the Investment Advisory and Distribution Agreements, and because shareholder approval of the Advisory Agreement was obtained through the use of false and misleading proxy materials. Third, Weiss contends that the Banking Act of 1933 makes it illegal for the Adviser to act as investment adviser to the Fund because it is a wholly owned subsidiary of Provident, a national bank.[3] Finally, Weiss alleges that Shearson has breached its fiduciary duty to the Fund under the Investment Company Act in that it receives several million dollars in compensation per year from the Fund while rendering virtually no services of value to the Fund. The relief sought by Weiss includes a judgment declaring the Advisory Agreement and the Distribution Agreement void, an order requiring that the Adviser and Shearson repay to the Fund all excessive fees paid to them by the Fund, and an order requiring the individual defendants to pay to the Fund damages caused by violations of the Investment Company Act and the Securities Exchange Act.

Now before the Court are various motions to dismiss filed by the defendants. The individual defendants, the Adviser, and Shearson all move to dismiss the complaint for failure to satisfy the demand on directors requirement of Rule 23.1 of the Federal Rules of Civil Procedure.[4] The individual defendants move to dismiss on the grounds that (1) the action created under section 36(b) of the Investment Company Act lies only against recipients of alleged excessive compensation; (2) there is no implied private right of action under sections 1(b) and 15 of the Investment Company Act; and, (3) the Court does not have the power to hear any pendent state claims against the directors. In addition, defendants Gates, Robertson, Pepper and Fortune move to dismiss on the ground that there has been no effective service of process upon them. Shearson moves to dismiss on the ground that there is no cause of action against it under section 36(b) of the Investment Company Act. The Adviser moves to dismiss on the grounds that the complaint does not state an action against it under the Banking Act of 1933, sections 1(b) and 15 of the Investment Company Act, the Bank Holding Company Act, or common law, and the complaint does not satisfy the verification requirements of Rule 23.1. Shearson and the Adviser also move to strike plaintiff's demand for a jury trial.

For the reasons explained below, the Court concludes that plaintiff has failed to

---

any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

**3.** Section 21 of the Banking Act of 1933, 12 U.S.C. § 378, subject to certain exceptions enumerated in section 16 of the Act, 12 U.S.C. § 24, makes it unlawful

[f]or any person, firm, corporation, association, business trust, or other similar organization, engaged in the business of issuing, underwriting, selling, or distributing, at wholesale or retail, or through syndicate participation, stocks, bonds, debentures, notes, or other securities, to engage at the same time to any extent whatever in the business of receiving deposits subject to check or to repayment upon presentation of a passbook, certificate of deposit, or other evidence of debt, or upon request of the depositor....

**4.** It is settled in this Circuit that defendants other than the corporation on whose behalf the derivative claim is asserted have standing to raise the defense of failure to comply with the requirements of Rule 23.1. *See Shlensky v. Dorsey*, 574 F.2d 131, 142 (3d Cir. 1978).

satisfy the demand requirement of Rule 23.1. In addition, the complaint must be dismissed as to defendant Robertson because of insufficient service of process. The Court deems it unnecessary to address the scope and existence of the causes of action alleged or the other claims raised in view of its determination that intracorporate remedies should first be exhausted.

## I. The Demand Requirement

Rule 23.1 of the Federal Rules of Civil Procedure states in pertinent part that a shareholder's derivative complaint shall "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority ... and the reasons for his failure to obtain the action or for not making the effort." The amended complaint states the following reasons for failure to make a demand upon the directors of the Fund to take up the cause of action: (1) derivative claims under section 36(b) are exempt from the demand requirements of Rule 23.1; (2) demand would be futile because Shearson and the Adviser control and dominate the Fund and its directors; (3) demand would be futile because the directors are named as defendants and they participated and/or acquiesced in the wrongs alleged; and, (4) the Fund's filing of an answer seeking dismissal of the suit demonstrates the opposition of the directors to plaintiff's claim and the futility of demand. Amended Complaint, ¶ 37.

Plaintiff has not pointed to any authority which persuades the Court that Congress intended that shareholder derivative actions brought pursuant to section 36(b) of the Investment Company Act be exempt from the demand requirement. Nothing in the language of section 36(b)[5] expressly excuses demand in actions brought by shareholders under that statute, nor does anything in the legislative history of section 36(b) indicate that Congress intended to eliminate the demand requirement. The legislative materials cited by plaintiff simply make clear the intent of Congress to create a federal cause of action by which security holders of investment companies could judicially challenge excessive compensation paid to investment advisers. Nothing in the legislative history expressly or implicitly reveals a Congressional concern that the demand requirement imposed by the Federal Rules of Civil Procedure was frustrating efforts by shareholders to attack fee provisions of investment advisory contracts. Rather, to the extent that the 1970 amendments sought to eliminate existing hurdles to shareholders' derivative suits challenging investment advisers' fees as excessive, they were intended to eliminate the requirement commonly imposed by the courts that the shareholder establish that payment of the fees constituted a "waste of corporate assets."[6] Although Congress may have considered, and then rejected, the possibility of imposing special procedural requirements on derivative suits under the Investment Company Act,[7] there is no evi-

5. See note 2, supra.

6. See, e. g., S.Rep.No. 184, 91st Cong., 1st Sess., reprinted in [1970] U.S.Code Cong. & Ad.News 4897, 4901; 115 Cong.Rec. 13,699 (1969) (remarks of Sen. Brooke); Investment Company Amendments Act of 1969: Hearings on S. 34 and S. 296 Before the Senate Comm. on Banking and Currency, 91st Cong., 1st Sess. 19–20 (1969) (testimony of SEC Commissioner Hugh F. Owens).

The leading case applying the doctrine of "corporate waste" to derivative actions challenging investment advisers' fees was Saxe v. Brady, 184 A.2d 602 (Del.Ch.1962). Under this doctrine, if the stockholders have ratified the investment advisory contract, a derivative suit will succeed only if the plaintiff establishes that

"what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth what the corporation has paid." Id. at 610. Application of the corporate waste doctrine virtually insulated investment advisory fees from judicial scrutiny. See Report of the Securities and Exchange Commission on the Public Policy Implications of Investment Company Growth, H.R.Rep.No. 2337, 89th Cong., 2d Sess. 141–43 (1966).

7. See Investment Company Amendments Act of 1969: Hearings on S. 34 and S. 296 Before the Senate Comm. on Banking and Currency, 91st Cong., 1st Sess. 30 (letter of SEC Commissioner Owens opposing suggested requirement that suing shareholder represent either 1% of

dence of any Congressional intent to dispense with the preexisting requirements of Rule 23.1 of which Congress was undoubtedly aware.[8]

This conclusion is consistent with other decisions interpreting section 36(b). Two other district courts recently have rejected claims that the demand requirement is inapplicable to actions brought under section 36(b). *See Markowitz v. Brody*, 90 F.R.D. 542, 554–556 (S.D.N.Y.1981); *Grossman v. Johnson*, 89 F.R.D. 656, 661–62 (D.Mass. 1981), *following Untermeyer v. Fidelity Daily Income Trust*, 79 F.R.D. 36, 45–46 (D.Mass.), *vacated on other grounds*, 580 F.2d 22 (1st Cir. 1978). Even in *Boyko v. Reserve Fund, Inc.*, 68 F.R.D. 692 (S.D.N.Y.1975), upon which plaintiff relies heavily, the court specifically stated that its conclusion that demand on directors in section 36(b) suits will be presumed futile when there is at least one affiliated or interested director on a fund's board, should not be "construed as a holding that Rule 23.1 has been in any way abrogated by Section 36(b)." *Id.* at 696. Finally, plaintiff's reliance upon *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), is misplaced. In *Burks* the Supreme Court held that under certain circumstances the disinterested directors of an investment company, pursuant to the business judgment rule, may terminate a derivative suit brought under the Investment Company and Investment Advisers Acts against other directors of the company. Although there is dictum in *Burks* to the effect that disinterested directors do not have the power to terminate derivative suits brought under section 36(b),[9] that is not authority for the proposition that demand need not be made on the directors in the first place. As the Court noted in *Burks*, Congress intended that independent directors act as "watchdogs" who would supply a check on management of investment companies and represent the interests of shareholders; these "watchdogs" were therefore entrusted with "the primary responsibility for looking after the interests of the funds' shareholders." 441 U.S. at 484–85, 99 S.Ct. at 1840–41 (footnote omitted).[10] It would be inconsistent with this Congressional scheme to permit shareholders in all instances to initiate derivative actions under section 36(b) without first presenting their claims to the independent directors. The independent directors, consistent with their obligation to represent shareholder interests, might be persuaded

---

fund's outstanding shares or $250,000 in net asset value of fund) (1969).

**8.** Indeed, in responding to a question expressing concern about the potential for nuisance suits under legislation which would authorize shareholders to bring an action against investment advisers, SEC Chairman Budge stated that "there are adequate safeguards under the Federal Rules of Civil Procedures [*sic*] and under this bill to prevent unjustified shareholder litigation." *Mutual Fund Amendments: Hearings on H.R. 11995, S. 2224, H.R. 13754, and H.R. 14737 Before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce*, 91st Cong., 1st Sess. 201 (1969).

The Court also finds unpersuasive Weiss's analogy to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Rather than dispensing with demand, section 16(b), by express language, creates its own demand requirement. *Cf. Markowitz v. Brody*, 90 F.R.D. 542, 550–554 (S.D.N.Y.1981) (rejecting argument that, by analogy to section 16(b), the contemporaneous ownership requirement of Rule 23.1 should not apply to section 36(b) actions).

**9.** "And when Congress did intend to prevent board action from cutting off derivative suits it said so expressly. Section 36(b), 84 Stat. 1428, 15 U.S.C. § 80a–35(b)(2), added to the Act in 1970, performs precisely this function for derivative suits charging breach of fiduciary duty with respect to adviser's fees. No similar provision exists for derivative suits of the kind involved in this case." 441 U.S. at 484, 99 S.Ct. at 1840 (footnote omitted).

**10.** Among the responsibilities assigned to the disinterested directors of mutual funds are review and approval of underwriting and investment advisory contracts, appointment of other disinterested directors to fill certain vacancies on the board, and selection of the fund's accountants. *See* 15 U.S.C. §§ 80a–15(c), 80a–16(b), 80a–31(a); *Burks v. Lasker, supra*, 441 U.S. at 483, 99 S.Ct. at 1840.

to take up the shareholder's claim.[11] The directors, on the other hand, might be in a position to resolve the grievance without litigation,[12] or to persuade the complaining shareholder that the claim is unjustified or that its prosecution would not be in the best interests of the company. *See* Note, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L.

Rev. 168, 171–72 (1976). Thus, even if the independent directors may not terminate a section 36(b) suit after demand has been made and rejected, the shareholders and the investment company are better served by requiring that demand nonetheless be made unless it is shown that demand would be futile.[13]

**11.** It is unsettled whether an investment company may itself bring an action against its adviser under section 36(b). In *Boyko v. Reserve Fund, Inc., supra,* the court reached the questionable conclusion that Congress presumed that the directors of a mutual fund would inevitably be hostile to a section 36(b) action against its investment adviser and therefore did not create such a cause of action in mutual funds themselves. *See* 68 F.R.D. at 695–96 & n.2. By contrast, in *Markowitz v. Brody, supra,* the court ventured in dictum that a private right of action in favor of mutual funds should be implied from section 36(b). Slip op. at 22 n.12; at —— n.12. Even if a mutual fund is precluded from suing under section 36(b), however, it may have a common law action against the adviser. *See Untermeyer, supra,* 79 F.R.D. at 45–46 & n.30.

**12.** The directors' power to terminate unilaterally an investment advisory contract under section 15(a)(3) of the Investment Company Act, 15 U.S.C. § 80a–15(a)(3), would give the board an important bargaining chip in negotiating with the adviser for recovery of excessive compensation.

**13.** Although it has been stated that the demand requirement is "inextricably linked" to the business judgment rule, *Cramer v. General Telephone and Electronics Corp.,* 582 F.2d 259, 274 (3d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979), it is important to distinguish the analysis appropriate when a court considers whether demand should have been made and that called for when it decides whether a properly initiated derivative suit should be terminated because of the "business judgment" of the corporation's directors that prosecution of the suit would not be in the corporation's interests.

The Rule 23.1 demand requirement is a procedural device intended to further the policy that an individual shareholder ordinarily should not usurp the responsibility of corporate management to determine whether and how to pursue a corporate claim. *See* 3B Moore's Federal Practice ¶ 23.1.15[4] (2d ed. 1980). Thus the question of demand and whether it is required is primarily addressed to the issue of *who* will assert a corporate claim—the corporation or a shareholder. A court will excuse demand only

when objective facts persuade it that the corporation will not take up the suit or otherwise act to redress the shareholder's grievances. *See, e. g., Nussbacher v. Continental Illinois National Bank & Trust Co.,* 518 F.2d 873, 878–79 (7th Cir. 1975), *cert. denied,* 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976) (demand excused because directors' opposition to prior, nearly identical lawsuit, was loud and clear message that board would under no circumstances take the action desired by the shareholder).

A decision to excuse demand, however, does not reflect upon the merits of a derivative action, and there will be some cases in which demand is futile, but the corporation is nonetheless able to terminate the suit after it has been properly initiated by the shareholder. Thus in *Nussbacher, supra,* the court observed that its determination that demand was futile did not require resolution of the question whether the board could terminate the action pursuant to the business judgment rule. *See* 518 F.2d at 878. Application of this "business judgment rule" requires reference to state corporation law, which furnishes the standards to be applied when the requisite demand has been made or demand has been excused, and the corporation's board of directors seeks to terminate a suit on the ground that the litigation is not in the best interests of the corporation. *See Burks v. Lasker, supra,* 441 U.S. at 477–80, 486, 99 S.Ct. at 1836–1838, 1841. If the directors have no interest in the challenged transaction, the courts will generally defer to a good faith decision of the board not to pursue a cause of action. Even if a derivative suit charges a majority of the directors of a corporation with self-dealing or other breach of fiduciary duty, and demand has therefore been excused, the corporation may still move to terminate the action by asserting the "business judgment" of a committee of independent directors that litigation is not in the corporation's best interests. In that case, however, the courts are likely to closely scrutinize a corporate decision to terminate derivative litigation, and the court may indeed be required to apply its own independent business judgment and decide whether litigation is in the corporation's interests. *See, e. g., Zapata Corp. v. Maldonado,* No. 113–1980, slip op. at 28 (Del. May 13, 1981); *Cramer, supra,* 582 F.2d at 275.

## II. *Whether Demand Would be Futile*

Having determined that the demand requirement applies to plaintiff's section 36(b) claim, as well as to his other derivative claims, it is now necessary to determine whether demand would have been futile and therefore may be excused.

■ Weiss alleges in his complaint three reasons in support of his position that demand would be futile: (1) Shearson and the Adviser control and dominate the Fund and its directors; (2) the directors have knowingly acquiesced in the transactions complained of; and, (3) the directors have made clear their opposition to plaintiff's claim by causing the Fund to file an answer asserting that plaintiff's claims lack merit.

### A.

Weiss alleges that demand would be futile because the Adviser and Shearson "control and dominate" the directors. Yet, it is uncontested that at the time the original complaint was filed four of the Fund's six directors were "disinterested persons" under the Investment Company Act.[14] Thus, when this action was commenced, a majority of the Fund's board of directors was composed of those persons entrusted by Congress with "responsibility for looking after the interests of the [Fund's] shareholders." *Burks v. Lasker, supra,* 441 U.S. at 485, 99 S.Ct. at 1840–41 (footnote omitted). Weiss offers no factual support for his assertion that these independent directors are controlled and dominated by the

Adviser and Shearson and would therefore be unable to fairly weigh the merits of his claims. Instead, Weiss offers the conclusory statement, without supporting facts, that the directors "were selected for their positions by Shearson and the Adviser and they are beholden to them for their directorial offices with the Fund and consider their directorial offices with the Fund a matter of great value and prestige in the business community." Amended Complaint, ¶ 37(c). The question whether a director is controlled by a third party, however, is "an intensely factual one," and Rule 23.1 requires that a plaintiff "assert the facts from which it is believed an inference of control could be drawn." *Vernars v. Young,* 539 F.2d 966, 968 (3d Cir. 1976).[15] A recent case, also involving claims that a mutual fund paid its investment adviser excessive compensation, rejected as inadequate a similar conclusory allegation that a board of directors with a majority of independent directors was controlled and dominated by the fund's investment adviser. *See Grossman v. Johnson, supra,* 89 F.R.D. at 660; *accord Jones v. Equitable Life Assurance Society,* 409 F.Supp. 370, 373 (S.D.N.Y.1975); *Kusner v. First Pennsylvania Corp.,* 395 F.Supp. 276, 284–85 (E.D.Pa. 1975), *rev'd on other grounds,* 531 F.2d 1234 (3d Cir. 1976). Since Weiss has pleaded no specific facts from which the Court may infer that the Fund's board of directors is controlled by either the Adviser or Shearson, that is no basis for excusing demand.[16]

**14.** A seventh director, also not an "interested person," was elected after the complaint was filed. *See* Doc. No. 17 at 5. Section 10(a) of the Investment Company Act, 15 U.S.C. § 80a–10(a), requires that no more than 60% of the members of the board of an investment company be "interested persons" of the company. The class of "interested persons" is very broad and includes virtually anyone with a financial, employment, or personal connection with an investment company or its investment adviser, any broker or dealer registered under the Securities Exchange Act of 1934, and any person affiliated with such a broker or dealer. *See* section 2(a)(19) of the Act, 15 U.S.C. § 80a–2(a)(19).

**15.** *Cf. Cramer, supra,* 582 F.2d at 276–77 (when 10 directors were not involved in alleged fraud-

ulent activities, no basis for concluding they were dominated by four director-defendants).

**16.** The Court declines to follow the conclusion in *Boyko v. Reserve Fund, Inc., supra,* 68 F.R.D. at 696–97, that futility of demand should be presumed whenever there is at least one interested director on a mutual fund's board. The decision in *Boyko* rested on the determination that "Congress assumed that the directors of the investment company would be antagonistic toward, and unlikely to prosecute, an action against the Fund's advisors for breach of fiduciary duty with respect to the receipt of compensation." *Id.* at 696. This reading of the legislative history, however, is inconsistent with that of the Supreme Court in *Burks v. Lasker, supra,* in which the Court found no

## B.

The next asserted ground for excusing demand is the allegation that the directors participated in and approved of the transactions at issue and are themselves named as defendants. In particular, the complaint alleges that the directors gave "rubber stamp" approval to the Advisory and Distribution Agreements (¶ 22), that they approved the Advisory Agreement even though they knew the Adviser was receiving 25% of the advisory fees after having subcontracted out all advisory functions (¶ 24), and that the directors solicited shareholder approval of the advisory agreement with proxy materials containing a false and misleading statement (¶ 26).

Notably, the complaint does not allege that the directors, in approving the Advisory and Distribution Agreements, were engaged in any kind of self-dealing or otherwise stood to obtain any personal advantage from approval of these contracts. Rather, the core of the allegations against the directors is that they breached statutory and common law fiduciary duties to the shareholders by approving contracts requiring payment of excessive fees for investment advisory services. The weight of legal authority convinces me that such allegations of approval of or acquiescence in the transactions challenged do not excuse demand upon the directors.

The leading case on the question of whether demand is required on directors who have approved or acquiesced in the challenged transaction is *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161,

38 L.Ed.2d 107 (1973). In *Kauffman* a shareholder of four mutual funds alleged that the directors of the funds conspired with the funds, their advisers and others to set excessive and noncompetitive management fees in violation of the antitrust laws. The court concluded that demand should not be excused "[w]here mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' ...." *Id.* at 265. Since the directors' decisions regarding selection and compensation of investment advisers were directed to a legitimate corporate purpose, and not tainted by any self-interest or other personal bias, there was no basis for conclusively presuming that demand on the independent directors would be futile. *Id.* at 266. A number of other cases have held that approval by independent directors of investment advisers' fees,[17] or of other corporate transactions,[18] will not necessarily prevent the board of directors from giving fair consideration to a shareholder grievance about the transaction. The Court is not faced with the issue of whether Weiss could pursue his derivative claim were he to make a demand upon the board and then have it refused.[19] It is clear, however, that the complaint does not allege facts upon which the Court may conclusively presume that the independent directors would not give fair consideration to plaintiff's claims and would refuse to take up the action or otherwise act to redress his grievances.

Finally, the fact that Weiss has named the directors as individual defendants is an

---

basis for presuming that the independent "watchdog" directors "could never be 'disinterested' where their codirectors or investment advisers were concerned." 441 U.S. at 485 n.15, 99 S.Ct. at 1841 n.15.

**17.** *See, e. g., Grossman v. Johnson, supra,* at 660; *Jones v. Equitable Life Assurance Society, supra,* 409 F.Supp. at 373–74; *Kusner v. First Pennsylvania Corp., supra,* 395 F.Supp. at 284–85; *but see Papilsky v. Berndt,* 59 F.R.D. 95, 97 (S.D.N.Y.1973), *appeal dismissed,* 503 F.2d 554 (2d Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 624, 42 L.Ed.2d 634 (1974).

**18.** *See, e. g., Lewis v. Valley,* 476 F.Supp. 62, 64 (S.D.N.Y.1979) (approval of executive compensation and stock option plans); *Brooks v. American Export Industries, Inc.,* 68 F.R.D. 506, 511 (S.D.N.Y.1975) (approval of management contract).

**19.** *Compare Markowitz v. Brody, supra,* at 562 (directors who reject demand may not terminate a shareholder's derivative action under section 36(b)), *with Grossman v. Johnson, supra,* 89 F.R.D. at 662–664 (independent directors may terminate shareholder's section 36(b) action pursuant to business judgment rule).

inadequate excuse for having failed to make the demand required by Rule 23.1. The prevailing rule is that the mere naming of the disinterested directors as defendants, without pleading facts showing the directors' self-interest or other bias, does not excuse demand.[20] In noting that naming independent directors of a mutual fund as defendants is often a "bootstrap" attempt to avoid the demand requirement of Rule 23.1, Judge Gurfein observed:

> I cannot agree that the mere naming of an unaffiliated director, who is charged with approving a challenged transaction, can create an irrebuttable presumption that he would not entertain a claim for relief against others. It is not for the plaintiff herself to build a wall around the unaffiliated director of a mutual fund, and then tell him he cannot jump over it. In short, merely naming the directors as defendants does not establish that a demand would have been futile.

*Phillips v. Bradford,* 62 F.R.D. 681, 688 (S.D.N.Y.1974). In this case as well, one may fairly infer that the directors were named as defendants only in the hope that demand would thereby be excused. For example, plaintiff takes the position that the elements of proof in the claims against the directors are coextensive with the proof required for the section 36(b) claims against the Adviser and Shearson.[21] Assuming, however, that Weiss could prove his claims against the Adviser and Shearson, parties whose ability to fully satisfy any judgment has not been questioned, no further monetary recovery could inure to the corporation by pursuing a questionable implied cause of action against the directors. The tactic of naming the directors as defendants, in the circumstances of this case, is an insufficient basis for excusing demand.

### C.

Finally, Weiss argues that the Fund's answer to his original complaint, in which the Fund asserts that plaintiff's allegations lack merit, demonstrates the hostility of the directors to his claims and the futility of demand. It is true that clear evidence of the directors' opposition to an action urged by a shareholder will in some circumstances excuse demand. *See, e. g., Nussbacher v. Continental Illinois National Bank & Trust Co.,* 518 F.2d 873, 878–79 (7th Cir. 1975), cert. denied, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976); Note, *supra,* 44 U.Chi. L.Rev. at 180–82. Plaintiff, however, ignores the rule in this Circuit that "[t]he futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight." *Cramer v. General Telephone & Electronics Corp., supra,* 582 F.2d at 276. In *Cramer* the board's expression of opposition to a derivative action after it had been filed was insufficient to excuse demand. Likewise, since the directors of the Fund expressed their opposition to Weiss' suit only after it was filed, that is not a basis for excusing demand.

### III. *Service of Process*

■ Defendants Gates, Robertson, Pepper and Fortune contend, and plaintiff does not dispute, that the service on May 8, 1980, of process directed to them on Michael J. Robinson, Vice-President and Treasurer of the Fund, was not effected in a manner authorized by Rule 4(d) of the Federal Rules of Civil Procedure. The record, however, indicates that subsequent to the filing of the motions to dismiss, defendants Gates, Pepper and Fortune have been served with summons and the amended complaint in a manner authorized by Rule 4(d). Therefore, as to them, the motion to dismiss for

---

**20.** *See, e. g., Heit v. Baird,* 567 F.2d 1157, 1162 (1st Cir. 1977); *Lewis v. Valley, supra,* 476 F.Supp. at 64; *Untermeyer v. Fidelity Daily Income Trust, supra,* 79 F.R.D. at 42–43; *Brooks v. American Export Industries, Inc., supra,* 68 F.R.D. at 511; *Kusner v. First Pennsylvania Corporation, supra,* 395 F.Supp. at 284–

85; *Jones v. Equitable Life Assurance Society, supra,* 409 F.Supp. at 373–74; *Phillips v. Bradford,* 62 F.R.D. 681, 688 (S.D.N.Y.1974).

**21.** *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions (Doc. No. 28) at 22.

insufficiency of service of process will be denied. *See Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1267–68 (4th Cir.), *cert. denied*, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971). There is no indication in the record that Robertson has been effectively served, and therefore the complaint must be dismissed as to him because Robinson was not authorized by either Rule 4(d) or Delaware law to receive process on his behalf.[22]

### Conclusion

An order will be entered dismissing the complaint for failure to satisfy the requirements of Rule 23.1 and dismissing the complaint as to defendant Robertson for ineffective service of process.

---

**22.** 10 *Del.Code* §§ 3104 & 3114, which authorize service of process on certain nonresidents, require that such service be made either on the Secretary of State or, in the case of a corporate director, on the corporation's registered agent.